WINNIFRED G. ROWLEY *vs.* GEORGE H. ELLIS.

Suffolk.    November 21, 1907. — February 27, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Negligence*, Employer's liability.    *Words*, "Farm laborer," "Employer himself."

Under § 79 of R. L. c. 106, which provides that "the provisions of the eight pre-
ceding sections shall not apply to injuries caused to domestic servants or farm
laborers by fellow employees," a foreman in charge of one of four farms be-
longing to the same owner, under the direction of a superintendent who visits
each farm once a day, such foreman receiving a salary of $35 a month and
having sixteen or eighteen men under him, is a farm laborer within the meaning
of the statute, and, if he is killed without conscious suffering by the violent
breaking of the sprocket chain of a cutting machine when he is showing the
workmen how to feed corn stalks into the machine, his widow cannot recover
from his employer for his death under the provisions of § 73 of the same chapter,
although she shows that the accident was caused by the sprocket around which
the chain passed having become worn by use, that the duty of inspecting and
caring for the safety of the cutting machine was entrusted to the superintendent,
and that the superintendent was negligent in not discovering the defect and
causing the necessary repairs to be made.

"The negligence of an employer himself" for which he is liable under R. L. c. 106,
§ 73, if it results in the instant death or death without conscious suffering of an
employee, does not include the negligence of one to whom the employer has
delegated the duty of maintaining machinery in a safe condition, for which,
among other things, the employer is made liable by the succeeding words of
the same section.

TORT under R. L. c. 106, § 73, by the widow of Edward J.
Rowley for causing the death of Rowley without conscious suf-
fering on September 15, 1903, while he was in the employ of
the defendant.    Writ dated October 31, 1903.

In the Superior Court the case was tried before *Holmes*, J.
The plaintiff introduced evidence tending to prove, among
others, the following facts:

At the time of the accident which caused the death of Rowley,
and for some time before, the defendant owned or leased and
operated four farms in Middlesex County, one situated at West
Newton, one near Oak Hill in Newton, another at Kendall
Green in Weston, called the Kendall Green farm, and a fourth
near the Weston and Wayland boundary line, called the Bigelow

farm. These farms comprised in all an acreage of over one thousand acres.

The defendant operated the farms as milk and dairy farms. In addition he was the principal stockholder and managing official of a large printing and publishing business in Boston. He employed one Van Norman as superintendent over all the farms above mentioned. This superintendent had general oversight and direction of all the farms and the work done thereon. The defendant himself directed the work on all the farms and left the details to the superintendent. The superintendent saw that his employer's general orders were executed, giving his orders to the foremen of the different farms and seeing that the work was carried out in accordance with these orders. On each farm was a foreman, who had charge of the men and who received orders from Van Norman, directed the labor of the farm hands in executing the orders and supervised the farm work under Van Norman's direction. Van Norman visited each farm at least once a day. The farms all were connected by telephone and orders frequently were given by Van Norman by that means. Van Norman had his headquarters at the West Newton farm.

Rowley was the foreman at the Kendall Green farm. He first was employed by the defendant in 1895 as foreman of a farm in Concord, Massachusetts, then owned and operated by the defendant. Rowley remained at Concord until 1900 when he went to Weston as foreman of one of the farms. In 1901 he went to Kendall Green and remained there as foreman until the time of his death. The number of farm hands on this farm varied with the seasons. In the winter, when there were fewest, there were from six to eight men, and in the summer the number was doubled. At the time he was killed there were sixteen or eighteen men under him.

He received a salary of $35 per month. Before Rowley was employed by the defendant he had worked about cattle and understood their care, as the defendant knew. While employed by the defendant he had charge of the care of a large number of cows on the farm of which he was foreman. He was not a mechanic.

Beginning some time in September of each year, a part of

the work on each farm was the cutting of ensilage and storing
it in a silo.  This was done in the following manner: The
growing corn first was cut and then was carried to a cutting
machine, which was set up on the farm.  In this machine the
corn stalks were cut into small pieces of about one half an inch
in length.  This corn, so cut, then was deposited immediately
in the silo, which was a cylindrical receptacle, built of wood,
with hoops, about thirty feet high and twelve or fifteen feet in
diameter.  The cutting machine was about five or six feet high
and fifteen or twenty feet long.  The cutting was done by
knives set in a cylindrical shaft, which revolved.  This shaft
was driven by a belt connecting it with the engine which
supplied the power.

In operating the machine a bundle of corn stalks first was
laid lengthwise in the feed box.  The moving belt in the feed
box carried the corn stalks toward the knife.  As they neared
the revolving knife, a carrier from above pressed the stalks
flat and carried them over rollers to the knife.  The chopped
material fell from the knife into a small carrier on the other
side which deposited it upon an inclined carrier, which in turn
conveyed it to the top of the silo.  The knife was turned by a
belt which ran from a pulley on the knife shaft to the engine.
The other moving parts of the machine all were operated by
a shaft, which received its power from the shaft revolving the
knife.  The power was communicated from the shaft last named
to the shaft turning the belt, rollers and carriers by means of
an endless chain, formed of detachable links which passed over
two sprocket wheels, one fixed on each shaft.  The sprocket
wheel fixed on the knife shaft was one third or one fourth as
large as the other one and was called the high speed sprocket.
These sprocket wheels had teeth or cogs, each tooth of which
fitted into the opening of a link in the sprocket chain.  The
sprocket wheels were made of cast iron, the chain of malleable
iron.  When in operation the small sprocket made about six
hundred revolutions per minute.  The proper place for the
person feeding the corn into the machine was alongside the
feed box on the same side as the sprocket chain.  The sprocket
chain had no covering.

The accident occurred on Tuesday, September 15, 1903.  On

the Friday or Saturday preceding, Van Norman was ordered by the defendant to begin the cutting of ensilage. Van Norman directed Rowley to get out the cutting machine, which was stored in the barn at Kendall Green. The machine was taken to the Bigelow farm, which was two or three miles distant, and set up in the corn field. A portable steam engine was sent out from Boston and connected with the cutting machine. On Tuesday, September 15, the machine was ready to run and was started up for trial and was run a few minutes without anything in it. Then some "loose stuff" was put through the machine, which ran apparently all right. There were present Rowley, one Foster, a teamster, one Garnis, another teamster, who had been sent over to the Bigelow farm that morning by Van Norman, one Jones, the engineer in charge of the engine, and eight or ten Italian laborers, who had been hired temporarily by the defendant.

After the machine had been tried for a few minutes, as described, a load of corn stalks came on the wagon of Garnis. Rowley was standing at the side of the feed box, on a platform provided for that purpose, on the side of the sprocket chain, and was showing the Italians how to feed the corn into the box. Corn was being fed into the box and was being cut, when the sprocket chain broke with great violence, and a piece of the chain composed of three links hit Rowley on the top of the head, cutting it open and exposing the brain. He fell to the ground unconscious and was carried to the Waltham Hospital, where he died a short time afterwards on the same day, without regaining consciousness.

At the time he was injured the cutting machine had been in operation not more than five minutes. It was running at an ordinary and proper rate of speed and the proper and usual quantity of corn was being fed into it; there was no more than the usual strain upon the machine and engine, and nothing had got into the machine to stop or clog it.

The machine was purchased by the defendant in 1897 from Joseph Breck and Sons of Boston. It was a Ross machine, first class when new. It was set up in 1897 at Kendall Green by one Parker, an employee of Breck and Sons, in the presence of the defendant and Van Norman, who assisted Parker. It had been

used every year since that on all the farms above described for all the ensilage cutting, having been moved from farm to farm. In 1902, Rowley had been confined to the house by illness during all the time the cutting machine was in use. One of the links which struck Rowley was produced at the trial, identified and introduced in evidence. The hook end of the link was twisted and half broken off. There was other evidence in regard to the cause of the accident, the findings warranted by which are stated at the beginning of the opinion.

At the close of the evidence the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions, which, after the death of *Holmes*, J., were allowed, with the consent of counsel, by *De Courcy*, J.

*F. H. Chase*, (*H. A. Guiler* with him,) for the plaintiff.

*J. Lowell & J. A. Lowell*, for the defendant.

LORING, J.   In this case the jury would have been warranted in finding that the accident here complained of was caused by one of the sprockets becoming worn so that it was hooked; that where a sprocket is hooked, the chain, when it passes around the wheel on the sprockets, in place of leaving the sprocket as it should do, is held by the hook of the sprocket and the link so held receives the full power of the engine and breaks with great force. The jury would have been warranted in finding also that the duty of inspecting and caring for the safety of the cutting machine in question was entrusted to Van Norman, and that Van Norman was negligent in not discovering the hook in the sprocket and causing the necessary repairs to be made.

There was no pretence here that the defendant had been negligent in selecting Van Norman, to whom the care of the machine was delegated.

The case therefore is one in which, had the plaintiff's intestate not been killed, there would have been a remedy both at common law and (apart from § 79) under R. L. c. 106, § 71, cl. 1. *Ryalls* v. *Mechanics Mills*, 150 Mass. 190. *Lynch* v. *M. T. Stevens Co.* 187 Mass. 397.

The plaintiff's argument in support of her contention that the case at bar falls within the first clause is that at common law the negligence of one to whom is delegated the duty of maintaining in a safe condition the machinery used by his employers is by

legal intendment the negligence of the master, and that death caused by such negligence is the result of the negligence of the master himself within the first clause of what is now § 73.

In the accurate use of words the negligence of a third person for which a defendant is liable is not the negligence of the defendant. And this is intensified by the wording of § 73, namely, "the negligence of an employer himself."

Further it is manifest that the class described in the second clause of § 73 is a class in contradistinction to those described in the first clause, and since the case at bar plainly falls within the second, it does not *prima facie* at least fall within the first.

But the plaintiff's intestate was killed, and the only statute which makes the defendant liable for his death is R. L. c. 106, § 73.

Had the plaintiff's intestate not been a farm laborer the case made out would have been a case where his death was the result of the negligence of a person for whose negligence the defendant is made liable by force of R. L. c. 106, § 71, cl. 1, and so within the second clause in R. L. c. 106, § 73.

We are of opinion however that although a foreman the plaintiff's intestate was a farm laborer within R. L. c. 106, § 79, and by force of that section the defendant is not liable under the second clause of § 73.

The plaintiff's contention is that the case made out by her is within the class described in the first clause of § 73 as well as within the second clause of that section.

It recently has been decided by this court in construing a similar statute imposing a penalty for wrongfully causing the death of another, (St. 1886, c. 140, now R. L. c. 111, § 267,) that words are to be taken in their ordinary meaning and not in that given to them as matter of legal intendment. Where a plaintiff while helpless is injured by the negligence of another he can recover because the injury is not caused by an act of contributory negligence on his part. It is commonly said that the allegation that he was in the exercise of due care is proved in such a case as matter of legal intendment. See *Black* v. *New York, New Haven, & Hartford Railroad,* 193 Mass. 448. In spite of that it was held by this court that a man who is killed while helpless through the gross negligence of the defendant's servants

is not in the exercise of due care within the meaning of those words in what is now R. L. c. 111, § 267. *Hudson* v. *Lynn & Boston Railroad*, 185 Mass. 510.

The decisive answer to the plaintiff's contention however is that if he is right § 73 makes the employer liable if death results from any negligence for which he is liable, whether his own or that of another and whether he is liable under the statute or at common law. If that had been the intention of the Legislature the liability would not have been restricted to cases where death is the result of the negligence of an employer himself or of a person for whose negligence an employer is liable under the provisions of § 71.

*Exceptions overruled.*