COMMONWEALTH *vs.* ALVAH G. WHEELER.

SAME *vs.* WILLIAM FOSS.

SAME *vs.* HARRY S. WALCOTT.

Middlesex.   January 17, 1910. — March 22, 1910.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Milk.   Constitutional Law.*

The provisions of R. L. c. 56, §§ 56, 57, making it a crime to sell or have in posses-sion with intent to sell milk which is not of good standard quality, as amended by St. 1908, c. 643, which provides that "milk which, upon analysis, is shown to contain less than twelve and fifteen hundredths per cent of milk solids or less than three and thirty-five hundredths per cent of fat, shall not be considered of good standard quality," are constitutional.

In a prosecution under R. L. c. 56, §§ 56, 57, as amended by St. 1908, c. 643, for having in possession with intent to sell milk which contained eleven and sixty-five hundredths per cent of milk solids and no more, evidence offered, to show that the defendant did not know and had no reason to know that the milk in his possession contained less than the prescribed quantity of milk solids, is immaterial.

In a prosecution under R. L. c. 56, §§ 56, 57, as amended by St. 1908, c. 643, for having in possession with intent to sell milk which contained eleven and sixty-five hundredths per cent of milk solids and no more, evidence offered, to show

that the milk in the defendant's possession was not deleterious or injurious to health and that it was nutritious and beneficial as an article of food, is immaterial.

In a prosecution under R. L. c. 56, §§ 56, 57, as amended by St. 1908, c. 643, for having in possession with intent to sell milk which contained eleven and sixty-five hundredths per cent of milk solids and no more, evidence offered, to snow that the milk in the possession of the defendant was without adulteration and just as it came from properly fed cows in sound health, is immaterial.

KNOWLTON, C. J.     These are prosecutions under the R. L. c. 56, §§ 56, 57, as amended by the St. 1908, c. 643. The last of these sections makes punishable selling, exchanging or delivering, or having in custody or possession with intent to sell, exchange or deliver, milk which is not of good standard quality. The amendment provides that, in prosecutions under these and certain other sections, " milk which, upon analysis, is shown to contain less than twelve and fifteen hundredths per cent of milk solids or less than three and thirty-five hundredths per cent of fat, shall not be considered of good standard quality." Each of the defendants admitted that, at the time alleged in the complaint, he had in his possession, with intent to sell it, certain milk which contained eleven and sixty-five hundredths per cent of milk solids and no more. The jury found each of the defendants guilty, and the cases were reported to this court upon questions of law raised at the trial. These questions all relate to the constitutionality of the statute. They are in the form of different requests to rule that the statute is unconstitutional, and of offers of evidence which were intended to show the unconstitutionality of the law.

The sections referred to are a part of an elaborate system of legislation regulating the sale of milk, particularly directed to the prevention of the sale of adulterated or unwholesome milk. In considering these statutes we must take into account matters of common knowledge, and facts and opinions which fairly may be presumed to have influenced the action of the Legislature.

Milk is a very important article of food, which enters largely into the sustenance and development of children. It is the natural food of infants for a considerable time after their birth, and the milk of the cow is often used to supply the deficiency of milk from the mother. Probably there is no other article of diet the purity and good quality of which are so important to the life and

health of the people, and especially to the life and health of young children, as are the purity and good quality of milk. It is also very easy to adulterate it, and it may be adulterated, especially by the addition of water, in such a way that nothing but a chemical analysis will detect the adulteration. The Legislature, in the interest of the public health, has enacted laws intended to enable the people to obtain milk of good quality, that is free from adulteration. No one can question the propriety of legislation upon this subject. If statutes are directed to this end, the methods adopted for accomplishing the object desired, so long as they have some manifest relation to the object, must be left to legislative determination. Not only in Massachusetts, but in several other States, the establishment of a standard founded on the quantity of milk solids and of fat contained in the milk has been adopted as the best way of preventing adulteration, and of securing for purchasers milk whose quality can be relied upon. *Commonwealth* v. *Keenan,* 139 Mass. 193. *Commonwealth* v. *Evans,* 132 Mass. 11. *Commonwealth* v. *Vieth,* 155 Mass. 442. *People* v. *Cipperly,* 37 Hun, 319, and 101 N. Y. 634. *State* v. *Smyth,* 14 R. I. 100. *State* v. *Crescent Creamery Co.* 83 Minn. 284; 54 L. R. A. 466. *State* v. *Campbell,* 64 N. H. 402. In each of the cases from other courts cited above, the constitutionality of such legislation has been affirmed. It is a familiar exercise of the police power for the prevention of fraud and the promotion of the public health. See also *Shivers* v. *Newton,* 16 Vroom, 469; *Powell* v. *Pennsylvania,* 127 U. S. 678; and *State* v. *Addington,* 77 Mo. 110.

The defendants offered to prove that they did not know and had no reason to know that the milk contained less than the prescribed quantity of milk solids. This was immaterial. It has often been decided that, in the public interest, the burden of ascertaining at his peril whether an article that he sells is within the prohibition of a criminal statute may be put upon the seller. *Commonwealth* v. *Farren,* 9 Allen, 489. *People* v. *Kibler,* 106 N. Y. 321.

They also offered evidence that the milk in their possession was not deleterious or injurious to health, and that it was nutritious and beneficial as an article of food. This, if proved, would not have shown that the law was invalid. The fact that a cer-

tain kind of milk is not injurious to health, and that it is some-what nutritious and beneficial, as an article of food, if used discreetly, with full knowledge of its qualities and deficiencies, is not enough to deprive the Legislature of its power to forbid the sale of it, if it would be likely to be used to commit frauds upon purchasers who might buy and use it, relying upon its supposed possession of a larger proportion of nutritious qualities, and if such use of it would be likely greatly to injure the public health, and particularly the health of young children. The Legislature might believe that the authorized sale of such milk would open so wide a door to the commission of frauds upon the community, and would be so injurious in its consequences, that such sales should be prohibited. And this, too, notwithstanding that such milk might be used without detriment by one who knew all about it, and might be nutritious, and under certain circumstances beneficial as an article of food.

The offer to prove that the milk was without adulteration, and just as it came from properly fed cows in sound health, is gov-erned by the same considerations. As was said in the opinion in *State* v. *Campbell,* 64 N. H. 402, "The statute tends to dis-courage the breeding of a certain class of cattle for the supply of the milk market. The difficulty of guarding against the adulter-ation of milk may have influenced the Legislature in fixing a standard of richness. Practically it makes no difference whether milk is diluted after it is drawn from the cow, or whether it is made watery by giving her such food as will produce milk of an inferior quality, or whether the dilution, regarded by the Legislature as excessive, arises from the nature of a particular animal or a particular breed of cattle. The sale of such milk to unsuspecting consumers for a price in excess of its value is a fraud which the statute was designed to suppress. It is a valid exercise by the Legislature of the police power for the prevention of fraud and the protection of the public health, and as such is constitutional." Similar principles have been applied to the sale of oleomargarine and other articles, which in themselves, if sold with a true representation of their character, are not objection-able, and are valuable. *Commonwealth* v. *Huntley,* 156 Mass. 236. *Powell* v. *Pennsylvania,* 127 U. S. 678.

None of the evidence offered and excluded goes far enough to

meet all the considerations upon which the Legislature may have acted.    It cannot be contended that the statute was not aimed at the protection of the public in a field over which the State has supervision.    Nor can it be contended that the legislation has not a manifest and direct relation to the objects intended to be accomplished.    It follows that the statute is constitutional.

*Verdicts to stand.*

*H. Parker*, for the defendants.

*J. J. Higgins*, District Attorney, for the Commonwealth.