COMMONWEALTH *vs.* CHARLES W. TITCOMB.

Suffolk.    December 3, 1917. — December 31, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Milk. Constitutional Law*, Class legislation.

The statute contained in R. L. c. 56, §§ 57, 62, as amended by St. 1910, c. 641, §§ 1, 2, making it a criminal offence to sell milk which is not of good standard quality and providing that "A producer of milk shall not be liable to prosecution for the reason that the milk produced by him is not of good standard quality unless" the sample of the milk has been taken in a certain way and unless he has failed to bring his milk to the legal standard within twenty days after notice in writing, while giving no such privilege and exemption to dealers in milk who are not producers, does not violate any right secured by the Constitution of the United States.  Following *St. John* v. *New York*, 201 U. S. 633.

Nor is the statute described above in contravention of any provision of the Constitution of the Commonwealth.

COMPLAINT, subscribed and sworn to in the Municipal Court of the Roxbury District of the City of Boston on December 8, 1916, under R. L. c. 56, § 57, as amended by St. 1910, c. 641, §§ 1, 2, charging that the defendant on August 11, "at Boston . . . within the judicial district of said court . . . did have in his custody milk not of good standard quality, that is to say, milk containing less than twelve and fifteen hundredths per cent of milk solids, with intent then and there unlawfully to sell the said milk within this Commonwealth," and also at the same time and place "did have in his custody with intent to sell as pure milk, milk from which a part of the cream thereof had been removed."

On appeal to the Superior Court the case was tried before *Morton*, J.  At the close of the evidence the defendant asked the judge to make the following ruling:

"The statute under which count one of the complaint is drawn is in violation of the limitations and restrictions of the Constitutions of the Commonwealth of Massachusetts and of the United States, and no conviction can be had for the violation of the statute under which the complaint is drawn."

The judge refused to make the ruling requested.  The jury returned a verdict of guilty; and the defendant alleged exceptions.

*C. A. Parker,* for the defendant.

· *A. C. Webber,* Assistant District Attorney, for the Commonwealth.

RUGG, C. J. The issue presented in this case is the constitutionality of R. L. c. 56, §§ 57 and 62, as amended by St. 1910, c. 641, §§ 1 and 2. Section 57 in substance imposes a penalty upon every person who, by himself, his servant or agent, or as the servant or agent of another, sells, exchanges or delivers, or has in his possession with intent to sell or deliver milk "which is not of good standard quality," a standard established by §§ 55 and 56 of the same chapter as amended by St. 1908, c. 643, (see now St. 1917, c. 189,) and not now questioned. *Commonwealth* v. *Wheeler,* 205 Mass. 384. Section 62, as amended, is in these words: "A producer of milk shall not be liable to prosecution for the reason that the milk produced by him is not of good standard quality unless such milk was taken upon his premises or while in his possession or under his control by an inspector of milk, by a collector of samples of milk, or by an agent of the dairy bureau or of the State board of health, and a sealed sample thereof was given to him, nor unless he shall fail to bring the milk produced by him to the legal standard for milk solids and milk fat within twenty days after written notice has been sent from the officer taking said sample that it is below said standard. At any time after the said period of twenty days allowed the producer to bring his milk to the legal standard has elapsed the officer taking the first sample may take a second sample, and if it shall be found to be below the legal standard for milk solids and milk fat prosecution may follow."

This statute is assailed as being arbitrarily discriminatory in favor of the producer of milk and against the seller who is not a producer, and as making an unfair and unreasonable classification, and as being violative of rights secured by the Constitution of the United States. So far as the Federal Constitution is concerned, these contentions of the defendant seem to us to be disposed of adversely by the decision of *St. John* v. *New York,* 201 U. S. 633. The statute of New York there under consideration prohibited under penalty the sale of "adulterated milk," a term so defined as to include not only milk to which foreign matter had been added or from which cream had been removed, but also milk in its natural and pure state deficient in certain percentages of

milk solids and fat, but altogether exempted from its operation producers of milk whose herd of cows naturally produced milk when mixed falling below the percentages of solids and fat required by the statute. In substance and effect that statute provided that a producer of milk might freely sell milk in its natural state, while all others were subject to a penalty for selling the same milk provided it did not conform to the statute standard. That statute was held not to violate any rights secured by the Federal Constitution. It there was said: "If we could look no farther than the mere act of selling, the injustice of the law might be demonstrated, but something more must be considered. Not only the final purpose of the law must be considered, but the means of its administration — the ways it may be defeated. Legislation to be practical and efficient must regard this special purpose as well as the ultimate purpose. The ultimate purpose is that wholesome milk shall reach the consumer, and it is the conception of the law that milk below a certain strength is not wholesome, but a difference is made between milk naturally deficient and milk made so by dilution. It is not for us to say that this is not a proper difference, and regarding it the law fixes its standard by milk in the condition that it comes from the herd. It is certain that if milk starts pure from the producer it will reach the consumer pure, if not tampered with on the way. To prevent such tampering the law is framed and its penalties adjusted. As the standard established can be proved in the hands of a producing vendor, he is exempt from the penalty; as it cannot certainly be proved in the hands of other vendors so as to prevent evasions of the law, such vendors are not exempt. In the one case the source of milk can be known and the tests of the statute applied; in the other case this would be impossible, except in few instances." In that opinion the court did not even refer to *Connolly* v. *Union Sewer Pipe Co.* 184 U. S. 540, 565, relied on by the defendant. In numerous other decisions that case has been distinguished and various classifications have been upheld against attack on the ground of inequality or discrimination. *Adams* v. *Milwaukee*, 228 U. S. 572. *District of Columbia* v. *Brooke*, 214 U. S. 138. *International Harvester Co.* v. *Missouri*, 234 U. S. 199. *Chicago, Terre Haute & Southeastern Railway* v. *Anderson*, 242 U. S. 283. *Ozan Lumber Co.* v. *Union County National Bank of Liberty*, 207 U. S. 251, 256. *McLean* v. *Arkansas*, 211 U. S. 539.

*Keokee Consolidated Coke Co.* v. *Taylor,* 234 U. S. 224. *Hall* v. *Geiger-Jones Co.* 242 U. S. 539, 555–557. *Booth* v. *Indiana,* 237 U. S. 391, 397. *Lindsley* v. *Natural Carbonic Gas Co.* 220 U. S. 61, 78. *Jeffrey Manuf. Co.* v. *Blagg,* 235 U. S. 571. *Metropolis Theatre Co.* v. *Chicago,* 228 U. S. 61. See *Tanner* v. *Little,* 240 U. S. 369, 380, 384.

The statute is not in contravention of any provision of the Constitution of this Commonwealth. The statute is designed to protect and promote the public health. Under present conditions of life milk is an essential article of food in almost universal use. Any statute rationally adapted to the end of securing its purity, preserving unimpaired its natural qualities, and securing it from adulteration, plainly is within the power of the Legislature. It was said in *Commonwealth* v. *Graustein & Co.* 209 Mass. 38, 42, that "The history of the milk legislation in this Commonwealth shows conclusively the determination of the law making power to protect the community from adulterated or impure milk." The intent of the vendor has been made immaterial. The main object being to shield the public from an imposition in guise of a fluid which may look like pure milk and yet be either adulterated or skimmed, an imposition difficult of detection, necessarily there must exist a wide discretion in the selection of appropriate means. It would be comparatively simple to ascertain whether the quality of milk offered for sale by the farmer, either at his door or at wholesale or retail delivery, was that produced naturally by his herd. It would be difficult commonly to find out whether the milk offered for sale, especially in cities, by dealers who were not producers, was of the natural quality given by the cows from which it had come. This and perhaps other conditions may have been within the knowledge of the Legislature in deciding that, in order to protect the public from imposition and the consequent possibility of sickness, a classification of vendors of milk into those who were producers and those who simply were dealers was necessary, or at least wise. When the statute is considered in its application to two vendors of milk selling in competition side by side, one a producer and the other a dealer who is not a producer, it has an appearance of inequality. See *O'Keeffe* v. *Somerville,* 190 Mass. 110, 113; *Gleason* v. *McKay,* 134 Mass. 419; *Opinion of the Justices,* 196 Mass. 603, 627. This appearance is strengthened by the sugges-

tion that the non-producing seller may have bought his milk of his competitor who is also a producer. But placing the situation in its true perspective minimizes this seeming inequality and demonstrates that it may not be substantial. The ultimate aim of the statute is to secure a pure and healthful article of food of widespread use. The individual consumer ordinarily is unable to detect adulteration and is well nigh powerless to defend himself against such deception. It is not commonly discernible on a superficial inspection. These factors justify a reasonable classification. The Legislature may have found that common experience has demonstrated that impurities and adulterations are found in the vast majority of instances in milk kept for sale by non-producing dealers and only in a comparatively insignificant and negligible number of instances in milk offered for sale by the owner of the cows from which the milk comes. It may have found also that instances of milk below the established standard offered for sale by producers arise usually from the failure of the cows to produce milk of that quality, rather than from any wilful act of the producer. It is, perhaps, matter of common knowledge that some breeds of cows often do not give milk of the quality required by the Massachusetts standard. See *Commonwealth* v. *Wheeler*, 205 Mass. 384. If that be so, it may have been thought that the farmer should be given a chance to bring the milk of his herd up to the required standard before rendering him liable to prosecution. Moreover, practical difficulties in the way of proving actual adulteration of milk in the hands of the non-producing vendor, not arising in the case of the producing vendor, can easily be conceived to exist. These considerations and perhaps others lead to the conclusion that a classification of vendors of milk into those who are producers and those who are not cannot be said to rest upon an immaterial, unreasonable, or arbitrary distinction. The Legislature has ample power under the Constitution to enact statutes regulating conduct based upon classifications which have some rational connection with the preservation of the public health. It may exclude some from their operation so long as such exclusion has a reasonable relation to the result to be achieved and is not a whimsical or arbitrary selection. It cannot proscribe one class upon the basis of race, *Opinion of the Justices*, 207 Mass. 601, of being a defendant rather than plaintiff, *Opinion of the Jus-*

*tices,* 207 Mass. 606, nor confer special privileges upon members of particular organizations, *Opinion of the Justices,* 211 Mass. 618, *Adair* v. *United States,* 208 U. S. 161, *Coppage* v. *Kansas,* 236 U. S. 1, nor attach extravagant penalties for failure to settle civil claims, *St. Louis, Iron Mountain & Southern Railway* v. *Wynne,* 224 U. S. 354, *Chicago, Milwaukee & St. Paul Railway* v. *Polt,* 232 U. S. 165, nor provide that railroad conductors shall be selected exclusively from a certain class of brakemen, *Smith* v. *Texas,* 233 U. S. 630, nor fail to establish equality of burden in respect of delinquency on the part of the carrier and shipper. *Atchison, Topeka & Santa Fe Railway* v. *Vosburg,* 238 U. S. 56, 61. But none of these instances are like in principle to the statute here attacked.

The employers' liability act and the workmen's compensation act each has exempted farmers from its operation and has not been regarded as thereby rendered unconstitutional. *Opinion of the Justices,* 209 Mass. 607, 610. *Young* v. *Duncan,* 218 Mass. 346, 353. *Rowley* v. *Ellis,* 197 Mass. 391.

The classification made by the statute here assailed bears a reasonable relation to the accomplishment of a lawful purpose and is not a mere arbitrary choice or preference. It falls within the principle of numerous of our decisions. *J. P. Squire & Co.* v. *Tellier,* 185 Mass. 18, 21. *Mutual Loan Co.* v. *Martell,* 200 Mass. 482, affirmed 222 U. S. 225. *Dewey* v. *Richardson,* 206 Mass. 430. *Commonwealth* v. *Danziger,* 176 Mass. 290. *Rideout* v. *Knox,* 148 Mass. 368. *Commonwealth* v. *Beaulieu,* 213 Mass. 138. *Commonwealth* v. *Libbey,* 216 Mass. 356, 358. *Bogni* v. *Perotti,* 224 Mass. 152, 157.

*Exceptions overruled.*