Argued March 19, affirmed April 23, rehearing denied May 28, 1929.

RAY SPENCER ET AL. *v.* THE CITY OF MEDFORD ET AL.

(276 Pac. 1114.)

For appellants there was a brief and oral argument by *Mr. W. E. Phipps.*

For respondents there was a brief and oral arguments by *Mr. John H. Carkin* and *Mr. Harry C. Skyrman.*

McBRIDE, J.—■ ■ The sole question to be determined here is whether the city has jurisdiction to pass an ordinance regulating the method of disposal of the kind of garbage with which plaintiffs are concerned. That the materials which they are engaged in hauling away, for the purpose of feeding their swine, is, in fact, garbage, is admitted in the complaint, and that it is useful for the purpose of feeding hogs, is admitted by the demurrer. Discussion of the provisions of the ordinance as to ashes and rubbish are not germane to this controversy. If legislation regulating the handling of such materials is beyond the power of the council, such provisions can be rejected in a suit brought by the parties aggrieved thereby. They can be rejected and still leave the provisions as to garbage intact, if, in themselves, they are not unconstitutional or wholly unreasonable. So far as the charter is concerned, we are of the opinion that its provisions are sufficiently broad to authorize any legislation, subject to the conditions of constitutionality and reasonableness, which may be, or, in good faith, may appear to be reasonable to secure the proper disposal of garbage accumulating

in the city. The charter provision, under which the city claims to enact the ordinance in question, is as follows:

"Section 25. City council shall have power and authority, within the limits of the city of Medford to enact all ordinances and adopt all regulations, not inconsistent with the constitution and laws of the state of Oregon as shall be needful or requisite to maintain and establish the peace, good order, *health, cleanliness, prosperity and general welfare of the city.*"

Under similar statutes, it has been usually held that a city has authority, in the interest of public health and cleanliness, to regulate and provide for the disposal of garbage. *Wheeler* v. *City of Boston,* 223 Mass. 275 (123 N. E. 684, 15 A. L. R. 275), is an instructive case. The facts are thus summed up in the opinion:

"There is little controversy as to the facts. The city having the responsibility of removing or causing to be removed offal and garbage that may be a menace to the public health, has adopted a system both of removal and disposal, employing as its agencies its own employes, its contractors and the Boston Development & Sanitary Company, and as its agents for disposal it has adopted the Boston Development & Sanitary Company under a contract. In order to carry out and make effective its policy, it has undertaken to refuse permission to anybody except one of its own agencies to transport garbage through the streets. The Boston Development & Sanitary Company has erected a large reduction plant on Spectacle Island, and furnished scows for the transportation of garbage from the water-front stations to the island. At the island it treats all the garbage by a 'reduction' process, and extracts from it grease, oil, and other products of commercial value. The garbage is therefore of value to it."

In the opinion of RUGG, C. J., which cites many authorities supporting the validity of the ordinance, the court says:

"So far as we are aware, there are no contrary decisions. These decisions rest in general upon the idea that garbage is widely regarded as an actual and potential source of disease or detriment to the public health, and that therefore it is within the well-recognized limits of the police power, for the municipality, acting for the common good of all, either to take over itself or to confine to a single person or corporation the collection, transportation through the streets and final disposition of a commodity which so easily may become a nuisance. Private interests must yield to that which is established for the general benefit of all. *Commonwealth* v. *Alger*, 77 Cush. (Mass.) 53; *Commonwealth* v. *Wheeler*, 205 Mass. 384 (91 N. E. 415, 137 Am. St. Rep. 456, 18 Ann. Cas. 319); *Commonwealth* v. *Titcomb*, 229 Mass. 14 (118 N. E. 328)."

*State* v. *Orr*, 68 Conn. 101, 102 (35 Atl. 770, 34 L. R. A. 279), is to the same effect. We quote from the syllabus as follows:

"Held:

"That it was not essential, that the garbage at the time of its transportation, should be in fact, a nuisance, and detrimental to health; it was enough if it was such 'refuse matter' as accumulated in the preparation of food for the table.

"That the absence in the charter of any express authority to require licenses for the business, did not prevent the mode of regulation adopted, since the collection and removal of garbage was a business which, as usually carried on was in its nature dangerous to public health, and the general police powers vested in the city by its charter, in connection with the Special Act of 1895, implied the right to limit the number of those who might pursue it.

"That evidence that the defendant was under contract with certain proprietors to remove all the garbage from their restaurants, was also properly excluded; as no contract to perform an unlawful act could justify its performance.

"Any occupation comes within the range of the police power, which is such as to be naturally liable to create a nuisance unless subjected to special regulation; whether it be so conducted as in fact to create a nuisance, or not."

*Pantlind et al.* v. *City of Grand Rapids,* 210 Mich. 18 (177 N. W. 302, 15 A. L. R. 280), is another strong case supporting defendants' contention here. The opinion is too long to admit of extensive quotation, but from the syllabus we quote the following:

"The right of plaintiff, owner of hotels, cafeterias, and restaurants, to the garbage from their tables and kitchens, must be subordinated to the general good, and they are compensated therefor in the common benefits secured by an ordinance providing for sale and removal of garbage, so that a city ordinance therefor is not wanting in the due process of law required by the constitution."

■ We have carefully followed up the citations in the foregoing opinions, as well as those cited by counsel, and find the great weight of authority sustains the right of defendant city, so far as the disposal of garbage of the character handled by plaintiffs is concerned, to pass the ordinance attacked by the complaint. *Landberg* v. *City of Chicago,* 237 Ill. 112 (86 N. E. 638, 127 Am. St. Rep. 319, 21 L. R. A. (N. S.) 830), and *Iler* v. *Ross,* 64 Neb. 710 (90 N. W. 869, 97 Am. St. Rep. 676, 57 L. R. A. 895), are cited by plaintiffs as sustaining a contrary doctrine. Both of these cases are in our opinion contrary to the

great weight of authority, and their reasoning does not commend itself to our judgment.

■ A court is always treading upon dangerous ground when it assumes to hold a city ordinance void on the ground that it is unreasonable, and this should not be done unless the unreasonable features are so apparent as to be beyond question. Both of the cases above cited are in flat contradiction to the case of *California Reduction Co.* v. *Sanitary Reduction Works*, 199 U. S. 306 (50 L. Ed. 204, 26 Sup. Ct. Rep. 100).

The plaintiffs here allege that they are conducting their business in a careful and sanitary manner, and no doubt this is true. The ordinance was not passed with reference to the manner in which one or two individuals carry on the business, but with reference to the manner in which all individuals engaged in the business were conducting it, or thereafter, might conduct it. It is easier to control the operations of a single concern than to watch and supervise the activities of two or half a dozen, and solicitude for the public health might well suggest to a city council the propriety of so centralizing the service as to have it under the municipal thumb without employing a large number of watchers or supervisors.

■ Counsel for appellants very plausibly suggests, that while the rule laid down in such cases as *California Reduction Co.* v. *Sanitary Reduction Works, supra,* may be applicable to large cities, that as applied to the City of Medford, it is unreasonable. Medford is a city of 12,000 inhabitants and "no mean city" as cities go in Oregon, and its inhabitants are certainly entitled to sanitary protection the same as larger centers of commerce.

■ The council is chosen by the people and is presumed to act honestly and for the best interests of their constituency. They ought, in view of their experience as citizens and officials of the community, to be fairly well advised as to its reasonable requirements and necessities, and we will not assume that they acted from any other than proper motives. That they had authority to pass the ordinance in question, we are well assured. That it was an unreasonable exercise of that power, we are not disposed to hold.

The ruling of the Circuit Court is affirmed.

AFFIRMED. REHEARING DENIED.

BELT, RAND and ROSSMAN, JJ., concur.