COMMONWEALTH *vs.* SOFFRON BROS. INC.
(and a companion case against the same defendant).

Suffolk. December 4, 1950. — February 9, 1951.

Present: QUA, C.J., RONAN, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Food.*

A verdict of not guilty should have been ordered at the trial of a complaint charging the defendant with a violation of G. L. (Ter. Ed.) c. 94, § 191, by delivering for pay shucked clams which were adulterated within § 186 "in that water had been mixed and packed so as to lower the quality and strength" of the clams, where it did not appear that any pertinent standards had been established and the guilt of the defendant was left conjectural by the evidence.

Two COMPLAINTS, received and sworn to in the Municipal Court of the Roxbury District of the City of Boston on January 10, 1948.

On appeal to the Superior Court, the cases were tried before *Morley, J.*, a District Court judge sitting under statutory authority.

*H. A. Simon*, for the defendant.

*John J. Sullivan*, Assistant District Attorney, for the Commonwealth.

COUNIHAN, J. These two complaints originated in a District Court and on appeal were tried together in the Superior Court to a jury who found the defendant guilty on each complaint. They come here on exceptions to the denial of a motion to quash and the denial of a motion for a directed

verdict of not guilty in each case. Each complaint charged a violation of G. L. (Ter. Ed.) c. 94, § 191, in that the defendant delivered for pay shucked clams which were adulterated within the meaning of G. L. (Ter. Ed.) c. 94, § 186. The first complaint alleged adulteration because of the presence of decomposed substance in the clams. The second complaint alleged adulteration "in that water had been mixed and packed so as to lower the quality and strength" of the clams.

On all the evidence the jury could reasonably find no more than that the defendant for pay delivered five gallons of clams to a restaurant on October 21, 1947, and on December 19, 1947, respectively, in one gallon tin cans. These cans had push on covers which fitted tight into the tops. These cans were placed by a driver of the defendant in an ice chest where only clams were kept, and he put ice around and over the tops of the cans. It was the practice of the driver to deliver to this restaurant such number of cans as was necessary to fill the ice chest. On the morning of October 21, 1947, at about 9:30 A.M., and again on December 19, 1947, at about the same time, an inspector of the department of health of the Commonwealth visited the restaurant and on each occasion took five cans of clams out of the ice chest. Two of these cans were opened and from each he took samples of the clams. These were delivered by him to the office of the department of health where they were examined by a chemist. He found a solid content of 13.8% in the samples taken October 21 and a solid content of 14.81% in the samples taken December 19. In his opinion there was added fresh water of 31% in the first sample and added water of 23% in the second sample, which were excessive amounts of water. It is necessary to wash clams before they may be eaten. It is the policy of the department not to prosecute when a solid content of 18% or more is found. There is no legal standard Federal or State relative to the solid content of clams. The defendant used a method of washing clams in use by some other clam dealers and by oyster dealers. There were other cans

of clams in the ice box when the driver delivered these cans on October 21 and December 19, and there was no evidence from what cans the inspector took samples.

· There was no evidence of decomposed matter in any of the samples taken, so it is patent that there was no evidence to support the first complaint and it was error to deny the motion for a directed verdict of not guilty on that complaint.

We are of opinion that it was also error to deny the motion for a directed verdict of not guilty on the second complaint. The offence charged is not based on violation of standards prescribed by statute as in the case of milk, for here no standards of any kind were established by statute or otherwise. Cases like *Commonwealth* v. *Wheeler*, 205 Mass. 384, are not applicable. Here the Commonwealth had the burden of proving beyond a reasonable doubt that the defendant for pay delivered adulterated clams to this restaurant. There was evidence that clams had to be washed to be edible, and there was no evidence that the method of washing used by the defendant necessarily reduced the solid content arbitrarily set up by the department. It may well be inferred from the evidence that persons other than the defendant or its employees had opportunity by accident or design to add excessive water. On all the evidence the question of guilt of the defendant is "left to conjecture or surmise and has no solid foundation in established facts." *Commonwealth* v. *O'Brien*, 305 Mass. 393, 401. *Commonwealth* v. *Curtis*, 318 Mass. 584, 585. *Commonwealth* v. *Shea*, 324 Mass. 710, 713–714, and cases there cited.

After argument before us the Commonwealth presented motions to amend the bill of exceptions and the record because of error in the description of the offence in the first complaint, and to remand the case to the Superior Court for the purpose of correcting the bill of exceptions and the record so that the first complaint would allege adulteration by excessive water as in the second complaint. In view of the conclusion we have arrived at on the second complaint, it would avail the Commonwealth nothing if the motions were allowed. We deny them.

Because we believe that the motion for a directed verdict of not guilty on each complaint should have been allowed, we do not consider the exceptions to the denial of the motions to quash. In each case the entries will be

*Exceptions sustained.*

*Judgment for the defendant.*