Argued October 26, affirmed November 26, petition for rehearing
denied December 21, 1971, petition for review
denied February 8, 1972

SCHMIDT, *Appellant, v.* MASTERS ET AL,
*Respondents.*
490 P2d 1029

422

*John J. Haugh,* Portland, argued the cause for appellant. With him on the briefs were O'Connell, Goyak, Haugh & Loew, Portland.

*Edward J. Sullivan,* County Counsel, Hillsboro, argued the cause and filed the brief for respondents.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

This appeal is from judgment of the circuit court on petitioner's Writ of Review of action of the Board of County Commissioners for Washington County in awarding a sanitary service (for waste collection and disposal) certificate pursuant to Ordinance No. 59 of Washington County. The Board awarded petitioner substantially less than all of the territory for which he had applied. The petition attacked the ordinance on grounds that the county had no authority to enact the ordinance; that the ordinance provides no standards for the establishment of the service areas provided therein; that it violates Art I, §§ 18, 20 and 21 of the Oregon Constitution, and Art I, § 10 and the Fourteenth Amendment to the United States Constitution.[1] The trial court held that Ordin-

---

[1] Oregon Constitution, Art I, § 18:

"Private property shall not be taken for public use * * * without just compensation * * *."

Oregon Constitution, Art I, § 20:

"No law shall be passed granting * * * privileges * * * which, upon the same terms, shall not equally belong to all * * *."

Oregon Constitution, Art I, § 21:

"No *ex-post facto* law, or law impairing the obligation of contracts shall ever be passed * * *."

ance No. 59 was within the authority of the county to enact, and that there was no violation of the Oregon and United States Constitutions as alleged by the petitioner.

Ordinance No. 59 was enacted for the purpose of "* * * providing a co-ordinated county-wide program for the safe, economical and efficient collection, storage, transportation and disposal of wastes * * * and to insure adequate standards of service * * *" therefor. Ordinance No. 59, Section 2. The ordinance reserves to the Board of County Commissioners, upon advice of the County Health Department and a Solid Waste Advisory Committee, which is set up under provisions of the ordinance, the granting of certificates for waste collection and disposal.

Section 8 requires applicants for certificates to state the types of service proposed for service areas specified by the applicant, what rates are to be charged, and, if he already provides service to all or part of the area, a statement of the number of customers served therein.

Section 9 provides that persons providing service must, within 30 days of the time the ordinance becomes effective if they are to continue, make application for a certificate, and that the applicant must show to the satisfaction of the Board that he has the majority of service accounts in the area for which he applies; that he has available equipment, facilities and

---

U. S. Const. art I, § 10:

"No State shall * * * pass any * * * ex post facto Law * * *."

U. S. Const. amend. XIV, § 1:

"* * * [N]or shall any State deprive any person of * * * property, without due process of law; nor deny * * * equal protection of the laws."

personnel sufficient to meet the standards of equipment provided by Ordinance No. 59 and ORS ch 459 and regulations promulgated thereunder, and that he has good moral character. He is also required under this section to give a statement of all disposal sites used and that he will dispose of all solid waste at sites approved by the Board, and provide a surety bond. This section also provides that applications can be made to serve an area by an applicant who is not already serving the area if it is not certified to another, or being inadequately served by another.

Section 10 provides for review of the applications by the County Health Department and the Solid Waste Advisory Committee and for their recommendations to the Board, together with their recommendations of whether additional areas should be included in any certificate issued or additional service and equipment required.

Section 11 provides a procedure whereby persons providing service to an area on or before January 1, 1969, but who did not serve a majority of the customers therein as required under Section 9 for certification, may, nevertheless, continue to serve customers they had in that area.

Section 12 provides, in part, that

"* * * in all cases where the Board finds that the applicant is able to provide adequate service within the service area, it shall issue an exclusive certificate for that area to the applicant."

The foregoing review of Ordinance No. 59 is not comprehensive, but sufficient for this opinion.

Ordinance No. 59 was enacted on July 22, 1969. The record before us does not show the date on which it was introduced, although an indistinct filing stamp

mark on the first page of the ordinance copy indicates it was filed with someone signing the name "Roger Thomssen" on July 3, 1969. From the record we glean this: the petitioner had commenced a sanitary service operation in the general area for which he applied for an exclusive license in 1967. On his application petitioner stated that he had 360 customers on January 1, 1969. He did not have a majority of the customers in any particular part of the area. His attorney stated at a meeting of the Advisory Committee in December 1969, that petitioner had 300 customers on January 1, 1969, and "almost 700" then (December 1969). Frank's Sanitary Service, which applied for and was certified a larger exclusive area than the petitioner, had slightly more than 1400 customers on January 1, 1969, and had been in business in the area for a much longer period of time than had petitioner. Besides the exclusive area awarded petitioner, he was specially awarded an area which included a few motels. He made no application for a special certificate under Section 11 of the ordinance, which would have allowed him to continue service to the customers he had in the area not awarded to him.

The attack on the county Board's authority to enact Ordinance No. 59 is partly based upon petitioner's assertion that the ordinance was passed before the effective date of ORS 459.210 et seq (Oregon Laws 1969, ch 90), which gives all counties authority to franchise and regulate waste collectors. In answer to this, Washington County says it adopted a Home Rule Charter in 1963, containing a general grant of powers to the county,[2] vesting exercise thereof in the Board

---

[2] Since adoption of the county home rule amendment to the Oregon Constitution, four of Oregon's 36 counties have adopted

of County Commissioners. The county contends that its authority thereunder, in fields of authority such as waste collection and disposal, is as great as that of a city with home rule powers; that it has been ruled cities may, and they do, franchise, limit and regulate waste collection; hence, home rule counties may do so, regardless of statutes giving all counties such authority. Petitioner contends that the state by enactment of the sections of ORS ch 459 preceding ORS 459.210 et seq, which sections provide generally for regulation of waste collection and disposal, had preempted the field and therefore has removed such authority as the county might otherwise have.

■ The County Home Rule Amendment to the Oregon Constitution (Art VI, § 10, adopted in 1958), states that

"* * * A county charter may provide for the exercise by the county of authority over matters of county concern."

Washington County accepted this general offer of authority in its charter in broad terms:

"* * * to the full extent granted or allowed by the Constitution and laws * * * of * * * Oregon."

It takes no documentation to observe that urbanization of areas outside of incorporated cities and resultant need for more sophisticated services than thinly populated areas require has resulted in a con-

home rule charters. For a discussion of the legal implications of adoption of a home rule charter by a county, with inclusion therein of a general grant of powers under the authority of the constitution with a vesting of the exercise of such powers in the legislative and governing body of the county, see Etter, *County Home Rule in Oregon*, 46 Or L Rev 251 (1967).

fusing and inefficient proliferation of special service districts; that a major reason for offering to counties broadening of authority under home rule was the need for a more sophisticated form of government than existed for such areas, carrying with it authority to do in localities what needs to be done there to seek order where there is confusion, and efficiency in public affairs where inefficiency increases, and to promote the public health, peace and safety. County home rule was an adaptation of city home rule, with limitations thereon to assure that state functions traditionally imposed upon counties by the state be continued.[9] We conclude that with reference to matters of local concern, the authority of a county under a home rule charter may be as broad as that of a city.

In *Spencer et al v. City of Medford et al,* 129 Or 333, 276 P 1114 (1929), it was held that a city has the authority, under the general police power conferred on it by charter, to regulate and provide for the disposal of garbage, and that an ordinance doing that was valid, although it prohibited all but one named entity from collecting garbage in the city. The court quoted with approval from *State v. Orr,* 68 Conn 101, 102, 35 A 770, 34 LRA 279 (1896):

> " 'Any occupation comes within the range of the police power, which is such as to be naturally liable to create a nuisance unless subjected to special regulation; whether it be so conducted as in fact to create a nuisance, or not.' " 129 Or at 340.

The Oregon Supreme Court said:

> "* * * The ordinance was not passed with reference to the manner in which one or two indi-

---

[9] Etter, *County Home Rule in Oregon,* 46 Or L Rev 251, 264, 279-81 (1967).

viduals carry on the business, but with reference to the manner in which all individuals engaged in the business were conducting it, or thereafter, might conduct it. It is easier to control the operations of a single concern than to watch and supervise the activities of two or half a dozen, and solicitude for the public health might well suggest to a city council the propriety of so centralizing the service as to have it under the municipal thumb without employing a large number of watchers or supervisors." 129 Or at 341.

In *Dunn v. Gray,* 238 Or 71, 392 P2d 1018 (1964), an exclusive sanitary service franchise had been granted by the City of Salem and such action was under challenge. Citing *Spencer et al v. City of Medford et al,* supra, the court said:

"A city has the unquestioned power to grant an exclusive license or franchise for the purpose of collecting and disposing of garbage."

We have no doubt that these holdings are as applicable to all solid waste collection and disposal as to garbage.

■ In *Davidson Baking Co. v. Jenkins et al,* 216 Or 51, 337 P2d 352 (1959), the Oregon Supreme Court settled any preexisting inconsistency in its opinions about whether a city may, under a general grant of power, have authority to do that which is not preempted by state law and is otherwise within the general ambit of authority of the particular city. This decision is equally applicable to home rule counties. We hold that unless the state has preempted the field of waste collection and disposal, the general grant of authority in the Washington County charter was a basis for Ordinance No. 59.

Turning to consideration of ORS ch 459, we have already held that Washington County had au-

thority to enact the ordinance regardless of that part of the act which was in Oregon Laws 1969, ch 90 (ORS 459.210 et seq).

The sections preceding ORS 459.210 were enacted

"[t]o protect the health, safety and welfare * * * and to provide a coordinated state-wide program on *disposal* of solid wastes * * *." (Emphasis supplied.) ORS 459.020.

ORS 459.080 provides that nothing in the act

"* * * is intended to prevent any city or *home rule county* from enacting supplemental regulations * * * necessary to meet special local conditions on storage, *collection, transportation or disposal* of solid wastes." (Emphasis supplied.)④

Nothing in the act indicates an intent by the state to license, franchise, limit or certificate individual waste collection businesses through any state agency except local units of government. It is idle to contend that this act preempts and eliminates local authority over local waste collectors.

■ We turn now to the constitutional challenges made against Ordinance No. 59.⑤ The first of these is

---

④ This section was repealed by Oregon Laws 1971, ch 648, § 33. However, other parts of ch 648 conferred even broader powers upon local units of government, including all counties, with respect to waste collection and disposal, subject only to the requirement that regulations made by local governments be consistent with state regulations. Section 1 of ch 648 declares it

"* * * to be the policy of the state * * * to * * * (1) Retain primary responsibility for adequate solid waste management with local government units * * *."

⑤ One might raise the question whether, in view of the legal fact that a franchise can be given to only one waste collector, as was approved in Spencer et al v. City of Medford et al, 129 Or 333, 276 P2d 1114 (1929), and Dunn v. Gray, 238 Or 71, 392 P2d 1018 (1964), it is at all necessary to consider specific provisions of the ordinance that allow a process whereby more than one

the contention that the ordinance passed by the Board provides no guidelines for the Board to follow when it acts upon individual applications.⑨ As we have previously indicated the ordinance requires the applicant to state the types of service proposed and rates to be charged; whether he presently serves the area he proposes, and, if so, how many customers he had there on January 1, 1969. If he had a majority of the customers there, he is given an initial apparent *prima facie* entitlement to a certificate by Section 9 of the ordinance, providing he has available the equipment, facilities and personnel to meet standards of the Ordinance and ORS ch 459, and has good moral character, which, we observe, is a desirable requisite for those licensed by government to call at odd hours at

---

waste collector may be certified. However, inasmuch as more than one is considered, we believe considerations of due process and equal protection of the laws are applicable. See Four County Dist. v. Commissioners, 149 Colo 284, 369 P2d 67 (1962). *But see* Gomez v. City of Las Vegas, 61 NM 27, 293 P2d 984 (1956), *infra*.

⑨ One might well inquire whether, when the local legislative body provides in an ordinance that it reserves to itself, rather than delegating to some other entity, the granting of a permit, license or certificate, it needs to set up any guidelines. Thus, with reference to issuance of permits under a zoning ordinance, McQuillin, Municipal Corporations 106, Zoning § 25.217 (1965), says at 107:

> "* * * Where, however, the legislative body reserves to itself the dispensing power to grant permits for zoning purposes under laws and circumstances which make the exercise of the power legislative in character, it has been deemed unnecessary to set forth by way of ordinance any standard or rule regarding the issuance of the permits; since the council would obviously be free to amend or repeal any standards previously adopted for its own guidance. Such a doctrine is, however, open to question, upon the ground that its application may in effect deny equal protection of the laws * * *."

The warning in the latter part of this quotation appears to have been heeded in City of Portland v. Welch, 229 Or 308, 364 P2d 1009, 367 P2d 403 (1961).

the back doors of homes. If it is determined that he can adequately service the area under these requirements, Section 12 states that he shall receive an exclusive certificate for the area. This, obviously, is an ultimate objective of the ordinance. Further provisions of the ordinance allow any other collector who does business in the area (one who does not have a majority of the customers there) to retain and serve those residential customers he had on January 1, 1969, so long as they live at the same address; and commercial and industrial customers under written contract, until January 1, 1979.

Provision is also made for competitors to apply for certificates for areas where certificated collectors are giving inadequate service. The advisors may advise a change in, and the Board may in appropriate cases change, the area specified by the applicant when a certificate is issued. Indeed, this was done in the case at bar. Petitioner specifically complains that this process allows a particular applicant to set the boundaries of a certificated area, and that such a guideline is none at all. This argument overlooks some obvious facts: (1) that the relative situation existing as to collection facilities at a time shortly before the ordinance became effective, not the applicant, substantially indicates the boundaries of a certificated area; (2) that if inequities occur on account of the formula adopted they may be remedied or partially remedied by a change in the proposed boundaries and by special certificates so that a collector who is not certificated may retain the customers he already has in the area. All of these requirements, considerations and attempts to alleviate hardship are guidelines. They avoid, so far as possible without defeating the purpose of the ordinance, arbitrariness and

discrimination which are the evils prohibited by constitutional assurances against taking property without due process of law, and affording equal protection of the laws to all within a class. They are directed toward a reduction in the number of vehicles collecting garbage and wastes over county streets in a given area. They thus bear a direct relationship to traffic congestion, possible littering of streets, safety to individuals, unsightliness and efficiency, which in turn bear a relationship to getting a necessary service done with a minimum injury to public health, safety and welfare.

Adequacy of guidelines is a question that must be settled under the circumstances presented in each case. Whether they are detailed in character is not necessarily important. In *Heer v. Dept. of Motor Vehicles,* 252 Or 455, 450 P2d 533 (1969), the Oregon Supreme Court held that the guideline of reasonableness in deciding who should take breath tests for detection of alcohol is adequate. We conclude the guidelines of the ordinance in the case at bar are reasonable and meet all constitutional challenges against them.

■ Petitioner argues that Ordinance No. 59 unreasonably discriminates between equally qualified collectors by favoring those with substantial businesses as of January 1, 1969, six months before the ordinance was enacted. If reduction of actual or possible confusion and inefficiency from crowding of competing garbage trucks on the streets is to be accomplished, which is a legitimate objective under the police power, and multiple collectors were there when the regulating ordinance was enacted, some must be eliminated to accomplish the objective. It would hardly be equal to hold that the one who serves the most customers should

be eliminated so that the one who serves the least may remain. Yet, the plaintiff argues that that rule must apply or the objective must be abandoned. This, of course, is the choice of alternatives which has led courts to rule that individual rights must give way before the legitimate exercise of the police power.

The record which has come to us on this writ does not disclose when Ordinance No. 59 was introduced. It necessarily was introduced at most about six months after January 1, 1969, and it may have been a matter of only weeks after that date. The ordinance needed to set some date for counting the numbers of customers the competing collectors had, for mere introduction of the ordinance would be conducive to a scramble for customers. Such would not be in the public interest. Considering the record we have, the date used was reasonable. It was not an *ex post facto* law as petitioner contends, for the context in which the date was set has no relationship whatever to the criminal sanctions of the ordinance.[②]

■ Petitioner contends the ordinance impaired the contractual rights existing between him and his customers. Any such contracts were necessarily subject to being modified by requirements of laws enacted in pursuance of the police power. See *Powell Grove Cem. v. Multnomah Co.*, 228 Or 597, 600, 365 P2d 1058 (1961), and *Highway Com. v. Clackamas W. Dist.*, 247 Or 216, 220, 428 P2d 395 (1967).

In *Gomez v. City of Las Vegas*, 61 NM 27, 293 P2d 984 (1956), the issues raised were much the same

---

[②] The prohibition against *ex post facto* laws is simply that no law shall be passed which prohibits or punishes an act which when done was not prohibited or punishable. See Black's Law Dictionary.

as those in the case at bar. The ordinance challenged there awarded an exclusive collection franchise, and the plaintiffs, who had been in the refuse collection business there were eliminated from the business. Rejecting the same constitutional challenges that petitioner raises here, the court said:

"* * * [T]hey overlook the fact that once it is determined the City is moving under a reasonable exercise of its police power * * * every objection here urged against validity of the challenged action vanishes into thin air * * * [citing authorities]." 61 NM at 33.

We conclude Ordinance No. 59 was a legitimate exercise of the police power, and valid.

Affirmed.