Argued and submitted March 7, affirmed July 6, 1983

# MULTNOMAH KENNEL CLUB,
*Appellant,*

*v.*

# DEPARTMENT OF REVENUE,
*Respondent.*

## (DOR No. MBI 80-1, OTC 1467, SC 28924)
666 P2d 1327

Robert F. Blackmore, Beaverton, argued the cause for appellant. With him on the briefs were Robert E. Thompson and Thompson, Adams & DeBast, Beaverton.

G. F. Bartz, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Dave Frohnmayer, Attorney General, Salem.

Before Lent, Chief Justice, and Peterson, Campbell, Roberts, Carson and Jones, Justices.

JONES, J.

**JONES, J.**

Plaintiff Multnomah Kennel Club questions the right of Multnomah County to impose a business income tax on pari-mutuel racing establishments. Multnomah County seeks to collect taxes from plaintiff for the years 1976 and 1977 totaling $17,885. Taxes for subsequent years are not as yet determined. Plaintiff questions the county's right to impose the business income tax under the Oregon Constitution and under ORS chapter 462 which plaintiff claims results in a state preemption of the field of income taxation of pari-mutuel betting establishments. The Tax Court denied plaintiff's claim and plaintiff appeals. ORS 305.445.

The Multnomah Kennel Club owns and operates a track for racing with pari-mutuel wagering. Multnomah County taxes all business within the county, including the plaintiff, at the rate of six percent of net income. The Multnomah County Business Income Tax does not discriminate between income earned on concessions and income earned on pari-mutuel wagering; the tax is imposed upon all income of plaintiff regardless of its source.

Multnomah County is a constitutional home rule county and therefore has the power to exercise "authority over matters of county concern." Or Const, Art VI, § 10. Multnomah County's business income tax, Mult County Ord 121, § 12, codified at § 5.70.090, replaces its business license tax, Mult County Code ch 5.80. The purpose of this business income tax is expressly "to raise funds," Mult County Ord § 3A, codified at § 5.70.040. This policy is further explained as follows:

> "The tax prescribed herein is for revenue purposes and is not imposed for regulatory purposes. The payment of a tax required hereunder and the acceptance of such tax by the county shall not entitle a taxpayer to carry on any business not in compliance with all other legal requirements." Mult County Ord 121, § 3B, codified as § 5.70.045(B).

The authority of a county to impose a business income tax is a matter of first impression for this court.

The first question for decision is whether Oregon's constitutional grant of county home rule authority gives counties the power to levy income taxes. A half-century quest for

county home rule culminated in the adoption in 1958 of Article VI, Section 10, of the Oregon Constitution, extending to constitutional home rule counties the power to exercise "authority over matters of county concern."[1]

In 1959, the state legislature promptly provided a statute prescribing procedures for adoption of county home rule charters.[2] Multnomah County adopted its charter in 1966. Multnomah County, Or, Charter (1966, amended 1976, 1977, 1978, 1980).

It is necessary to distinguish between the authority of the legislature and that of local governments when deciding home rule cases. We said in *LaGrande/Astoria v. PERB*, 281 Or 137, 141-42, 576 P2d 1204 (1978):

"The relationship between the authority of the legislature and that of local governments under these provisions during the past 70 years has occupied this court in more than 75 cases. As might be expected, the court has employed a variety of formulations in explaining these decisions. This is only proper, since that relationship presents a number of distinct issues rather than a single issue. In any given case, it is necessary to distinguish whether it involves (1) the validity of a local act in the absence of a contrary state law; (2) the validity of a state law in the absence of a contrary local act; (3) the validity of a

---

[1] The 1958 amendment to the Oregon Constitution read:

"The Legislative Assembly shall provide by law a method whereby the legal voters of any county, by majority vote of such voters voting thereon at any legally called election, may adopt, amend, revise or repeal a county charter. A county charter may provide for the exercise by the county of authority over matters of county concern. Local improvements shall be financed only by taxes, assessments or charges imposed on benefited property. A county charter shall prescribe the organization of the county government and shall provide directly, or by its authority, for the number, election or appointment, qualifications, tenure, compensation powers and duties of such officers as the county deems necessary. Such officers shall among them exercise all the powers and perform all duties, as distributed by the county charter or by its authority, now or hereafter, by the Constitution or laws of this state, granted to or imposed upon any county officer. Except as expressly provided by general law, a county charter shall not affect the selection, tenure, compensation, powers or duties prescribed by law for judges in their judicial capacity, for justices of the peace or for district attorneys. The initiative and referendum powers reserved to the people by this Constitution hereby are further reserved to the legal voters of every county relative to the adoption, amendment, revision or repeal of a county charter and to legislation passed by counties which have adopted such a charter." (Amended in 1960 and 1978.)

[2] Act of May 25, 1959, ch 527, Or Laws 1959, § 924 (codified as amended at ORS 203.710-.810 (1979).

local act said to conflict with a state law; or (4) the validity of a state law said to conflict with a local act. * * *" (Footnotes omitted.)

Of the various forms of conflict possible between a state and local law, we deal here with "(3) the validity of a local act said to conflict with a state law."

For the years in question, the power of statutory home rule counties to levy taxes was expressly granted by ORS 203.120(5) (repealed as unnecessary by Or Laws 1981, ch 140, § 5).

ORS 203.035(1)[3] states that a statutory home rule county has authority "over matters of county concern, to the fullest extent allowed by Constitutions and laws of the United States and of this state." A more specific grant of taxing power is unnecessary. ORS 203.035(2) provides:

"The power granted by this section is in addition to other grants of power to counties, shall not be construed to limit or qualify any such grant and shall be liberally construed, to the end that counties have all powers over matters of county concern that it is possible for them to have under the Constitutions and laws of the United States and of this state."

Former ORS 203.120(5) provided:

"In addition to other authority or powers, the county governing body has the authority and powers to transact county business, as follows:

* * * * *

(5)   To estimate and determine the amount of revenue to be raised for county purposes, and to levy the rate necessary therefor, together with the rate required by law for any other purpose and cause the same to be placed in the hands of the proper office for collection."

Although section 5 of 1981 Oregon Laws, chapter 140, repealed ORS 203.120(5), the power to tax was not repealed since it is a

---

[3] ORS 203.035(1) provides:

"Subject to subsection (3) of this section, the governing body or the voters of a county may by ordinance exercise authority within the county over matters of county concern, to the fullest extent allowed by Constitutions and laws of the United States and of this state, as fully as if each particular power comprised in that general authority were specifically listed in ORS 203.030 to 203.065."

"matter of county concern" generally granted. The preamble to the repealer specifically provided:

"Whereas the Fifty-seventh Legislative Assembly enacted ORS 203.035 in 1973 in order to grant to the governing body of each county power to exercise legislative authority within the county over matters of county concern, to the fullest extent allowed by Constitutions and laws of the United States and of this state; and

"Whereas many statutes relating to matters of county concern had previously been enacted by the Legislative Assembly; and

"Whereas such statutes are unnecessary since the governing body and voters in each county can now enact ordinances which treat the subject matter of the statutes in the manner deemed necessary or desirable in each county; and

"Whereas repeal of statutes relating to matters of county concern, therefore, does not indicate a lack of power in the county governing bodies to act on the subject matter of such statutes nor express any judgment by the Legislative Assembly as to the policies established therein; and

"Whereas the Sixty-first Legislative Assembly supports the principle that matters of county concern should be left to the governing body and voters of each county to be regulated by county ordinance in the manner deemed necessary or desirable in the county * * *." Or Laws 1981, ch 140.

Since the legislature has granted the power to statutory home rule counties to levy taxes, it follows logically that constitutional home rule counties such as Multnomah County have a like power to levy taxes. So, even in the absence of an express statutory grant, we hold it is an implicit power of a constitutional home rule county to levy taxes. The Multnomah County Home Rule Charter implements a general grant of power "over matters of county concern to the fullest extent granted or allowed."[4] Etter, *County Home Rule in Oregon Reaches Majority,* 61 Or L Rev 3, 16 n 68 (1982).

---

[4]

"PREAMBLE

"We, the people of Multnomah County, Oregon, in recognition of the dual role of the county as a unit of local government and as an agency of the state, and in order to avail ourselves of local determination in county affairs to the fullest extent possible under the constitution and laws of the state, by this charter confer

Plaintiff contends the kind of tax selected is not a matter of county concern. Plaintiff's premise is that certain taxes (*e.g.*, on property, privileges, and occupations), are traditional local concerns while other taxes (*e.g.*, on sales and income), are traditional state concerns. That position is not an accurate generalization of municipal law, for local sales and income taxes have been widely used in other states since the 1930's.[5] Although Oregon municipalities have typically imposed certain taxes while the state has imposed different

---

upon the county the following powers, subject it to the following restrictions and prescribe for it the following procedures and governmental structure.

"* * * * *

"Chapter II

"POWERS

"2.10 GENERAL GRANT OF POWERS

"(1) Except as this charter provides to the contrary, the county shall have authority over matters of county concern to the fullest extent granted or allowed by the constitutions and laws of the United States and the State of Oregon, as fully as though each particular power comprised in that general authority were specifically listed in the charter."

[5]

"New York City adopted the first local sales tax in 1934. New Orleans followed in 1938. Due to revenue problems that developed after World War II, local sales taxes were adopted by various cities in California, and also in Illinois, Mississippi, and Utah. About one-half of the incorporated cities in California had adopted sales taxes prior to the enactment of the Bradley-Burns Act. Presently, both counties and cities may impose the tax and nearly all do.

"At the beginning of 1968, local sales taxes were in effect in approximately 2400 cities and 370 counties in 16 states, including Alaska, Arizona, California, Colorado, New Mexico, and Utah in the west. The rates ranged between one-half of one per cent and three per cent.

"In 1939, Philadelphia instituted the first local income tax or earnings tax. Again, the use of this tax by other units followed World War II. Toledo, Ohio imposed a local payroll tax in 1946 and Louisville, Kentucky in 1948. This type of tax is now imposed by municipalities in eight states (Alabama, Kentucky, Maryland, Michigan, Missouri, New York, Ohio, and Pennsylvania). The rates range from one-half of one per cent to two per cent. The number of local units imposing this type of tax ranges from one city in Alabama to more than 3000 cities, boroughs, townships, and school districts in Pennsylvania.

"It is not suggested that all of these taxes are being imposed under home rule. But to contend that these are not typical municipal taxes and could not be imposed under home rule is to ignore local revenue developments since World War II, as well as specific rulings in several states." Kehrli & Mattis, *The Authority of Home Rule Cities and Counties in Oregon to Levy Sales and Income Taxes*, 5 Will L J 183, 190 n 38 (1969).

ones, this customary distinction between the "subjects" of state and local taxation does not create mutually exclusive constitutional authorities. *LaGrande,* 281 Or at 153-55.

■      Plaintiff asks us to apply the balancing "test" of *State ex rel Heinig v. City of Milwaukie,* 231 Or 473, 373 P2d 680 (1962), where we said:

> "* * * Each case requires a weighing of the state's interest against the interest of the municipality. In some instances the need for uniformity, or the benefit of a widespread application of the law, or the recognition that the matter dealt with is interrelated with other functions of the state and similar considerations will require that the statute have preference over the charter; on the other hand the charter will prevail when the advantages of local autonomy are paramount." *Id.* at 488.

But we held in *State ex rel Haley v. City of Troutdale,* 281 Or 203, 208, 576 P2d 1238 (1978):

> "* * * [T]hat test expressly related to the validity of a state law concerning local modes of government, not to the validity of state and local regulations addressed to private persons. * * *"

The *Heinig* test does not extend to "all conflicts of state and local policy." *LaGrande,* 281 Or at 146. Because this is a county tax on private persons rather than a state law concerning county governance, the *Heinig* test does not apply.

■      As to plaintiff's first contention, we conclude that the constitutional grant of power to a home rule county includes the power to levy an income tax.

■      The second question raised by the plaintiff is whether the State of Oregon has pre-empted the field of income taxation of pari-mutuel betting establishments by enactment of ORS chapter 462.

ORS chapter 462 governs state licensing of race meets. ORS 462.067 provides for greyhound racing as follows:

> "All licenses of race meets except those subject to ORS 462.057 and 462.062 shall make payments as follows:
>
> "(1)    License fee - $100 per racing day, payable to the commission.
>
> "(2)    Percentage of gross mutuel wagering payable to the commission * * *."

ORS 462.100 provides that the license fees and taxes imposed under chapter 462 "* * * shall be in lieu of all other *licenses and privilege taxes* or charges by the state or any county, city or other municipal corporation *for the privilege of conducting the race meet* * * *." (Emphasis supplied.)

The tax described in ORS chapter 462 ("The license fee *and tax * * * for the privilege of conducting the race meet"* (emphasis supplied)), is payable to the state racing commission. It is collected in aid of a regulatory program, different from a tax imposed *solely* for revenue purposes.

The stated purpose of the Multnomah County Business Income Tax is the raising of revenue. It is not a "license" or "privilege" tax. As previously quoted, Section 3 of the ordinance directs that:

"The tax prescribed herein *is for revenue purposes* and *is not imposed for regulatory purposes.* The payment of a tax required hereunder and the acceptance of such tax by the county shall not entitle a taxpayer to carry on any business not in compliance with all other legal requirements." (Emphasis supplied.)

We hold that ORS 462.100 only limits the county's power to impose "licenses and privilege taxes," "for the privilege of conducting the race meet * * *." The Multnomah County Business Income Tax is a tax imposed upon plaintiff's business income. Payment of the tax is in no way connected with the privilege of conducting a race meet.

■ The state is deemed to have exercised its power to preempt a field only where the intent to do so is apparent. *LaGrande,* 281 Or at 148-49. Had the legislature intended to foreclose local income taxation of pari-mutuel racing establishments, it could and should have given explicit direction to that effect.[6] Multnomah County Ordinance No. 121 is not inconsistent with the taxing objectives of ORS chapter 462.

We conclude Multnomah County has the authority and power under its home rule charter to impose a business

---

[6] The 1981 legislature tabled Senate Bill 475 which would have prohibited the imposition of the Multnomah County Business Income Tax on race meets.

income tax and that the tax does not conflict with the prohibition in ORS 462.100 against other privilege taxes for holding a race meet.

The Tax Court is affirmed.