Argued and submitted May 24, 1985, affirmed on appeal; reversed on cross-appeal June 4, reconsideration denied August 1, petition for review denied October 21, 1986

(302 Or 158)

BUCHANAN et al,
*Respondents - Cross-Appellants,*

*v.*

WOOD,
*Appellant - Cross-Respondent.*

(A8306-04179; CA A32883)

720 P2d 1285

Susan E. Watts, Portland, argued the cause for appellant - cross-respondent. With her on the briefs were Jack L. Kennedy and Kennedy, King & Zimmer, Portland.

John B. Leahy, County Counsel, Portland, argued the cause for respondent - cross-appellant. With him on the briefs was Jane Ellen Stonecipher, Assistant County Counsel, Portland.

Before Joseph, Chief Judge,* and Warden and Newman, Judges.

NEWMAN, J.

Joseph, Chief Judge, dissenting on appeal; concurring on cross-appeal.

---

* *Vice* Richardson, P. J.

## NEWMAN, J.

Defendant appeals a judgment declaring that the Court Reorganization Act (the Act)[1] preempted a Multnomah County Home Rule charter provision[2] for election of a District Court Clerk and that defendant was not entitled to a salary for the position. Plaintiffs cross-appeal from the award of attorney fees to defendant for trial and for appeal.[3] ORS 19.010(1) and ORS 19.010(2). We affirm on the appeal and reverse on the cross-appeal.

In October, 1981, the Governor signed the Act. It provided that, effective January 1, 1983, the state would assume primary responsibility for the operation and administration of the state's courts. The Act declared that,

"as a matter of state-wide concern, it is in the best interests of the people of this state that the judicial branch of state government, including the appellate, tax, circuit and *district courts, be funded* and *operated* at the state level. The Legislative Assembly finds that *state funding and operation* of the judicial branch can provide for best state-wide allocation of governmental resources according to the actual needs of the people and of the judicial branch by establishing an accountable, equitably *funded and uniformly administered*

---

[1] Or Laws 1981 (Special Session), ch 3.

[2] Multnomah County Charter, section 6.50.

[3] The judgment declared that

"the office of Multnomah County District Court Clerk was abolished as of January 1, 1983, by pre-eminent State legislation.

"It is further the judgment of this court that the defendant Daniel E. Wood is not entitled to wages as Multnomah County District Court Clerk.

"Judgment in favor of Multnomah County and against defendant Daniel E. Wood is entered in the amount of $6,151.07, which constitutes net wages paid to defendant from January 1, 1983 to April 29, 1983.

"* * * * *

"Judgment is entered in favor of defendant Daniel E. Wood and against plaintiff Multnomah County in the amount of $10,499.35, representing Mr. Wood's attorney fees incurred herein."

The order entered after judgment provided:

"Plaintiff Multnomah County shall pay defendant Daniel Wood's reasonable attorney fees with respect to the appeal of the judgment previously entered in this matter. Subject to modification by further order of this court or an appellate court, the County shall not be obligated to pay more than $2,000 on account of said attorney fees."

*system* of justice for all the people of this state." (Emphasis supplied.)

It is not disputed that the Act created state employed district court clerks and district court administrators to perform "duties, powers and functions" that, under prior law, had been performed by county employed clerks and court administrators.[4]

On May 18, 1982, however, the voters of the county, by initiative Measure 6, amended the charter to provide for the election of a county employed district court clerk. The initiative provided:

"QUESTION:   Shall certain county appointive offices be made elective, their salaries be set by popular vote, and other restrictions be enacted?

"PURPOSE:   Amends County Home Rule Charter by making these presently appointed officers elective by people: Sheriff, County Clerk, District Court Clerk and County Assessor * * *."

The explanation in the Voters Pamphlet specified that the functions of the district court clerk were to be those "presently performed by the District Court Administrator selected by a majority of the county's 13 district court judges."

On August 26, 1982, the Board of County Commissioners appointed defendant district court clerk pending the election of a clerk. Before his appointment, defendant was assistant to the district court administrator. The Board also adopted Ordinance No. 336 which provided:

"The district court clerk of Multnomah County shall assist in the performance of the duties of the District Court Administrator under the supervision of the District Court Administrator."

In a special election in September, 1982, the county voters failed to repeal the May amendment. In the November, 1982, general election, the voters elected defendant to be district court clerk and approved a salary for the position of $30,130 per year.

As assistant to the district court administrator,

---

[4] *See* Or Laws 1981 (Special Session), ch 3, § 4, 8-13.

defendant became a state employe on January 1, 1983, and the state paid him a salary for that position.[5] Defendant also received a salary from the county as district court clerk, although the Board did not assign duties to him in place of or in addition to those that he performed as a state employe.[6] Defendant performed no services as district court clerk after December 31, 1982.

In April, 1983, plaintiff Buchanan, as County Executive, directed the county comptroller to withhold defendant's county salary. Thereafter, the county filed this action to determine if the Act abolished the county office of district court clerk and if defendant was entitled to a salary for that office after December 31, 1982. Defendant counterclaimed for the amount of his salary from April 30, 1983, and for his attorney fees.

In his first assignment, defendant asserts that the court erred in ruling that the Act preempted the charter amendment of May, 1982, creating the elective office of district court clerk. Defendant concedes that under the Act the state took over the duties that, pursuant to the May measure, the Board had assigned to him as district court clerk, but he argues that the Board should have assigned to him other duties that the state did not take over.

Defendant, however, misdescribes the nature of the office of district court clerk that the voters created. The wording of the initiative amending the charter and the explanation in the Voters' Pamphlet show that the May, 1982, initiative gave to that office the particular functions that the district court administrator then performed. The functions that the initiative gave were taken over by the state pursuant to the Act. *See* Or Laws 1982 (Special Session), ch 3, § 12. The Act and the amended county charter conflicted, assigning the same functions to different offices.

■    Our resolution of the conflict necessarily involves

---

[5] Defendant became an Administrative Analyst III under the district court administrator, who also became a state employe on January 1, 1983.

[6] On January 4, 1983, the Board of Commissioners enacted an ordinance that modified the job descriptions of the other three elective offices "created" by the May 18, 1982, amendment. It said nothing about the office of District Court Clerk.

defendant's second assignment, in which he argues that Article VI, section 10, of the Oregon Constitution precludes the state from preempting the county office.[7] Plaintiff responds that defendant's argument is a claim that the Act is unconstitutional and that, because defendant did not plead unconstitutionality as an affirmative defense, we should not consider it. ORCP 19B. Defendant did, however, raise the issue both before and after trial, and it was argued extensively below. Plaintiff was not prejudiced by defendant's failure to plead unconstitutionality. Moreover, we cannot resolve the conflict between the state law and the county charter without resort to the constitution. Accordingly, we consider defendant's argument.

■   Defendant correctly asserts that the state's legislative power is limited by Article VI, section 10, which states:

> "A county charter may provide for the exercise by the county of authority over matters of county concern. * * * A county charter shall prescribe the organization of the county government and shall provide directly, or by its authority, for the number, election or appointment, qualifications, tenure, compensation, powers and duties of such officers as the county deems necessary. Such officers shall among them exercise all the powers and perform all the duties, as distributed by the county charter or by its authority, now or hereafter, by the Constitution or laws of this state, granted to or imposed upon any county officer. * * * The initiative and referendum powers reserved to the people by this Constitution hereby are further reserved to the legal voters of every county relative to the adoption, amendment, revision or repeal of a county charter and to legislation passed by counties which have adopted such a charter * * *."

That provision gives "home rule" counties authority over "matters of county concern." *See also Caffey v. Lane County,* 298 Or 183, 187, 691 P2d 94 (1984). Legislative enactments, however, remain preeminent in substantive matters of statewide concern. *See Pacific N.W. Bell v. Multnomah Co.,* 68 Or App 375, 378, 681 P2d 797, *rev den* 297 Or 547 (1984). The leading cases on conflicts between local "home rule" authority

---

[7] The parties did not raise and we do not consider whether Article II, section 10, which forbids any person from holding two lucrative offices, would be relevant to the facts of this case. *See State v. Beveridge,* 88 Or 334, 171 P2d 1173 (1918).

and state legislative power concern state constitutional provisions on *city* home rule,[8] which differ from Article VI, section 10. The city home rule provisions create an analogous sphere of local authority and, accordingly, we rely on them to resolve the conflict here. *See Multnomah Kennel Club v. Dept. of Rev.,* 295 Or 279, 666 P2d 1327 (1983); *Schmidt v. Masters,* 7 Or App 421, 428, 490 P2d 1029 (1971), *rev den* (1972).[9]

■    Two types of state statutes impinge on local autonomy: "those which regulate the organization of local government and those which deal with substantive state policy and affect local government." *City of Roseburg v. Roseburg City Firefighters,* 292 Or 266, 275, 639 P2d 90 (1981). We are faced here with the latter kind, because the organization of the court system is of paramount state concern. The effect of the Act on county governments is a result of the state's implementation of its substantive policy. In such a case, the state statute "prevails over contrary policies preferred by some local governments if it is clearly intended to do so, unless the law is shown to be irreconcilable with the local community's freedom to choose its own political form." *LaGrande/Astoria v. PERB,* 281 Or 137, 156, 576 P2d 1204, *aff'd on rehearing* 284 Or 173, 586 P2d 765 (1978). (Footnote omitted.)

■ ■    Contrary to the suggestion in the dissent, the voters intended to, and did create, the office of district court clerk to perform specific functions—those that the district court administrator then performed. The state's intention to preempt those functions is clear. The dissent concedes that the act preempted all of those functions, but suggests that the county "office" remained in existence and that the salary continued to attach to it. To suggest such a result overlooks the intent of the voters when they adopted the initiative. Their intent to create this elective office of district court clerk is inseparable from their intent to give it the functions that the district court administrator then performed. The state's preemption of all of those functions served, under the circumstances, to preempt the office and to nullify it. The county voters did not intend that the office of district court clerk exist in name only and that the county pay a salary to defendant for doing nothing.

---

[8] Article IV, section 1(5), and Article XI, section 2.

[9] The parties also do not assert that there is any reason here that we should not.

Moreover, the preemption of the county office of district court clerk is not "irreconcilable" with the county's freedom to choose its own political form. Although the Act removed certain governmental functions of *statewide* concern from county control, the county remained free after December 31, 1982, to create county offices to administer functions of county concern, although it did not do so here. The state's preemption of all of the functions of the office of district court clerk on January 1, 1983, did not impinge on the county's freedom to choose its own political form.[10] Accordingly, when the Act became effective, the county office ceased to exist and thus became a nullity. *See Fischer v. Miller,* 228 Or 54, 363 P2d 1109 (1961).

Defendant also asserts that the court erred in its ruling that he is not entitled to a salary for his position as district court clerk. It is clear from what we have already held that the assignment is without merit. The office of district court clerk that the county voters created ceased to exist on January 1, 1983. Defendant is not entitled to a salary for holding a non-existent office.

Plaintiffs cross-appeal, urging that the court erred when it awarded attorney fees to defendant, both at trial and on appeal.[11] We agree. Defendant argues that the county was obligated to pay his attorney fees because he was a county employe. Even if he could be deemed a county employe after that date, the county had no statutory or contractual obligation to provide him with counsel to defend this action or to pay his attorney. Furthermore, *Deras v. Myers,* 272 Or 47, 535 P2d 541 (1975), on which defendant relies, does not assist him. There the court upheld the award at trial of attorney fees to the prevailing party in an action that challenged the constitutionality of a law limiting campaign expenditures. The court stated:

---

[10] Defendant relies on *State ex rel Heinig v. Milwaukie et al,* 231 Or 473, 373 P2d 680 (1962), in which the Supreme Court reversed an order granting a preemptory writ of mandamus which ordered the city of Milwaukie to establish a civil service system for firemen. In *Heinig,* however, the Supreme Court held that the state law that required a civil service system for firemen dealt with a matter of local, not statewide, concern.

[11] Plaintiff objected below and on appeal to the allowance of attorney fees to defendant and preserved those objections.

"[C]ourts of equity have the inherent power to award attorney fees.

"* * * * *

"[A party] should not be required to bear the entire cost of * * * litigation the benefits of which flow equally to all members of the public." 272 Or at 66.

Assuming that defendant otherwise would be entitled to invoke this equitable power, defendant is not a prevailing party. *See Lewis v. Dept. of Rev.*, 294 Or 139, 143, 653 P2d 1265 (1982).

Affirmed on appeal; reversed on cross-appeal.[12]

**JOSEPH, C. J.,** dissenting on the appeal; concurring on the cross-appeal.

I agree that the trial court erred in awarding attorney fees to defendant.

I dissent with respect to affirming the judgment that says that the Court Reorganization Act "preempted" the Multnomah County Home Rule Charter provision for election of a district court clerk and that defendant was not, therefore, entitled to a salary for that position. The majority correctly decides that the 1981 statute preempted the *functions* of that Multnomah County Charter official and then incorrectly treats the charter as having been amended and the effecting ordinances as having been repealed by the state legislature by Or Laws 1981 (Special Session), ch 3.

On May 18, 1982, the county's voters, in a towering act of illogic and unwisdom, amended the county charter to provide for the election of a county district court clerk. The measure did not fix the specific functions of the office, although the Voters' Pamphlet explanation specified that the functions were to be those "presently performed by the District Court Administrator * * *." The Board of County Commissioners subsequently appointed defendant to the office and by ordinance defined, more or less, what the functions of the office would be. Still later, the voters elected defendant to the office and fixed his salary.

---

[12] The voters of Multnomah County repealed the office of District Court Clerk on November 6, 1984.

It is perfectly clear that the legislature had the power to, and did, take away from the office, and defendant as the officer, all state court functions. What the legislature could not do, and could never have intended to do, was to amend the Multnomah County charter. Moreover, the legislature did not have the power to amend a Multnomah County ordinance and, in 1981, before the ordinance was enacted, could not have intended to amend it, let alone void defendant's 1982 election or the voters' act of fixing his salary. Therefore, when the Court Reorganization Act became effective, defendant occupied a charter-created office at a salary that the voters of the county in their infinite wisdom said he was entitled to and to which were assigned functions that he could not lawfully perform under preemptive state law. Aside from questions that are not raised in this litigation (such as defendant's holding two lucrative positions at the same time), I can see no state law or constitutional reason how or why the 1981 law could have amended the charter and ordinances to destroy the position and to have repealed the voters' fixing of his salary. The majority thinks that the voters' intentions in respect to a problem they never knew about are known to it and are controlling. Unfortunately, that shows that the majority simply does not understand what the issues are.[1]

I dissent.

---

[1]Although I do not wish to comment on the matter at any length, I do not necessarily agree that *LaGrande/Astoria v. PERB,* 281 Or 137, 576 P2d 1204, *aff'd on rehearing,* 284 Or 173, 586 P2d 765 (1978), has anything to do with a *county* home rule charter under Article VI, section 10.