IN THE OREGON TAX COURT
REGULAR DIVISION
Property Tax

| | | |
|---|---|---|
| ALEKSANDR SHEVTSOV, | ) | |
| | ) | |
| Plaintiff, | ) | **TC 5441** |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MULTNOMAH COUNTY ASSESSOR, | ) | **ORDER GRANTING DEFENDANT-** |
| | ) | **INTERVENOR'S MOTION FOR** |
| Defendant-Intervenor. | ) | **SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiff's complaint, on appeal from a decision of dismissal in the Magistrate Division, asks the court to reduce the real market value (RMV) of the subject property, an unimproved parcel of land listed on the records of Defendant-Intervenor (the county) under account No. R146286.[1]  Plaintiff seeks relief for tax years 2019-20 and 2020-21.  The county has moved for summary judgment dismissing Plaintiff's complaint.  The county's motion, in effect, asks the court to uphold the RMV shown on the roll and to deny the reduction Plaintiff seeks.  Plaintiff resists the motion.[2]

---

[1] Plaintiff appealed separately regarding his property under account No. R542590.  The decision on that appeal is under TC 5442.  See first sentence of the order in TC 5442.

[2] Plaintiff, who is not represented by counsel, filed a "Response Objection to Defendant-Intervenor's Motion for Summary Judgment and Counterclaims (Breach of Oral Contract agreement)" on January 17, 2023 (erroneously showing the date January 14, 2022).  To interpret Plaintiff's arguments, the court reads that response

When a plaintiff appeals to this division from a Magistrate Division decision of dismissal, this division's first task is to determine whether dismissal was proper. *See Salisbury v. Dept. of Rev.*, 24 OTR 497, 505-06 (2021) (describing standard). If so, "this division will likewise dismiss the appeal and issue a judgment against the party dismissed. If this division decides that dismissal was not appropriate, then this division will proceed to hear any procedural issues and the merits of the case." *Id.* at 506. Because appeals to this division are *de novo*, this division considers the arguments the parties make in this division for and against dismissal, applying the summary judgment standards in Tax Court Rule (TCR) 47, and applying the substantive law to the factual record that the parties present to this division. In this case, the court will begin by determining whether to dismiss the case for any of the reasons that the county asserts.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

together with Plaintiff's August 17, 2022, filing in response to the county's unsuccessful motion to dismiss. The court does not interpret either of Plaintiff's filings as including a cross-motion for summary judgment. Plaintiff styled his January 17, 2023, filing as including "COUNTERCLAIMS (Breach of Oral Contract agreement)," but the text of his filing states only the following on that subject: "Defendant (Jeff Brown) lacks knowledge or information sufficient to form counteroffer propose to Plaintiff to appeal the Magistrate Division of the Tax Court and include 2019 year. Therefore, subsequent day Jeff Brown and Plaintiff reach out oral contract agreement." Interpreting this text as a motion by Plaintiff to amend his complaint to add a new claim, the court denies that motion. TCR 23 A requires consent from the other parties or the court to amend a complaint after 20 days. Neither Defendant nor the county has consented. The court must grant leave to amend "freely * * * if justice so requires." TCR 23 A. In this case, the court concludes that justice is not served by now allowing Plaintiff to raise a new claim based on allegations of an oral agreement that he necessarily would have been aware of since before he filed his complaint. *See Edwards v. Lewis*, 76 Or App 94, 707 P2d 1298 (1985).

## II. TABLE OF ISSUES

The county's motion raises four substantive issues, summarized in the following table:

| Tax Year | Issue | County's Summary Judgment Grounds | Laws Involved |
|---|---|---|---|
| 2020-21 | 1 | Failure to pay the $30 charge imposed by county to file a petition with county's Board of Property Tax Appeals (BOPTA) | ORS 309.110(7)[3] (allowing appeal to Tax Court from BOPTA order)<br><br>Multnomah County Code (MCC) 7.008 ("The Division [of Assessment, Recording and Taxation] shall charge a filing fee for a [BOPTA] Appeal, as set by Board resolution.")<br><br>Multnomah County Resolution No. 2013-159 ("The division shall charge a filing fee of $30 per account for a petition filed with the [BOPTA], effective for tax years beginning on or after July 1, 2014.") |
| | 2 | Property does not include a "dwelling" | ORS 305.288(1) (allowing correction without BOPTA appeal if property is a "dwelling" and 20% reduction to RMV is requested and determined) |
| 2019-20 | 3 | Failure to seek BOPTA review before appealing to Tax Court | ORS 305.275(3) ("If a taxpayer may appeal to the [BOPTA], then no appeal may be allowed under this section.") |
| | 4 | Property does not include a "dwelling" | ORS 305.288(1) (allowing correction without BOPTA appeal if property is a "dwelling" and 20% reduction to RMV is requested and determined) |

A. *Issues 2, 3 and 4: Failure to File BOPTA Petition for 2019-20; Lack of a "Dwelling" Under ORS 305.288(1)*

The court finds that the relevant facts are uncontested as to all issues. Furthermore, the law is well settled as to Issues 2, 3, and 4; therefore, the court proceeds to resolve those three issues now.

/ / /

---

[3] References to the Oregon Revised Statutes (ORS) are to the 2019 edition unless otherwise indicated.

B.    *Issue 3:  Failure to file BOPTA petition for tax year 2019-20*

Issue 3 arises only for tax year 2019-20.  The county alleges that Plaintiff did not appeal to the Board of Property Tax Appeals (BOPTA) for that year before appealing to the Magistrate Division.  Plaintiff does not dispute the allegation, and nothing in the record indicates that he appealed to the BOPTA.

Subject to exceptions, a taxpayer seeking to reduce the value on which property tax is measured must petition the county BOPTA for relief before the taxpayer may file a complaint in this court.[4]  *See* ORS 309.100(1) (allowing BOPTA petition).  The opportunity to file a BOPTA petition arises near the end of each year, starting when the county assessor mails the tax statements; petitions must be filed on or before December 31.  ORS 309.100(2).  When the BOPTA acts on a petition by issuing an order, the taxpayer may appeal the order by filing a complaint in the Magistrate Division.  ORS 309.110(7).  If the taxpayer fails to first petition the BOPTA for relief, the taxpayer generally is prohibited from appealing directly to the Magistrate Division.  *See* ORS 305.275(1) (stating general rule that a person "aggrieved by and affected by" certain actions of government involving property tax may appeal to Magistrate Division); ORS 305.275(3) (stating as an exception, "[i]f a taxpayer may appeal to the [BOPTA] under ORS 309.100, then no appeal may be allowed under this section.").

/ / /

/ / /

---

[4] Appeals of certain industrial property and appeals of centrally assessed property are filed directly in the Magistrate Division; the BOPTA lacks jurisdiction as to those appeals.  ORS 308.584(6) ("A petition may not be filed with a county board of property tax appeals for a reduction in value of [centrally assessed property]."); *see* ORS 305.403(1) ("An appeal by a taxpayer dissatisfied with the assessed value or specially assessed value of land or improvements of a state-appraised industrial property must be brought in the tax court.").  In addition, as discussed below, a taxpayer may appeal directly to the Magistrate Division under ORS 305.288 notwithstanding failure to pursue a BOPTA appeal for certain property that includes a "dwelling" (subsection (1)) or when "good and sufficient cause" exists for failure to pursue a BOPTA appeal (subsection (3)).  Finally, the Department of Revenue has discretionary authority to grant relief under ORS 306.115(3).

As to Issue 3, Plaintiff does not dispute that he failed to file a petition with the BOPTA for tax year 2019-20 before filing his complaint in the Magistrate Division. The court will grant the county's motion with respect to Issue 3.

C.       *Issues 2 and 4: Lack of a "Dwelling" Under ORS 305.288(1)*

Issues 2 and 4 are the same for both tax years. They arise under ORS 305.288(1), which, as noted above, allows a property taxpayer who has not appealed to the BOPTA to nevertheless appeal directly to the Magistrate Division for the current year and for either of the two immediately prior tax years. *See* ORS 305.288(1) ("The tax court shall order a change or correction applicable to * * * the current tax year or for either of the two tax years immediately preceding the current tax year[.]").[5] Relief is available under ORS 305.288(1) if all of the following conditions apply:

> (a) The property "was or is used primarily as a dwelling (or is vacant)";
>
> (b) The property "was and is a single-family dwelling, a multifamily dwelling of not more than four units, a condominium unit, a manufactured structure or a floating home";
>
> (c) A request is made to reduce the RMV by at least 20 percent compared to the RMV on the roll; and
>
> (d) The court determines that the RMV is at least 20 percent less than the RMV on the roll.

*See generally Shevtsov v. Dept. of Rev.*, 24 OTR 83, 85-87 (2020) (explaining requirements of ORS 305.288(1) in the context of parcel in Clackamas County held by Plaintiff). In this case, the county put forward evidence--the declaration of an Appraisal Supervisor employed by the county--that the subject property is "bare/vacant land * * *." (Inv's Decl of Elliott at 2.)

---

[5] Alternatively, as noted, relief is available under ORS 305.288(3) if the taxpayer shows "good and sufficient cause" for failure to appeal to the BOPTA. Plaintiff has not alleged "good and sufficient cause," and no facts supporting relief on those grounds are before the court.

Plaintiff does not dispute this evidence. Based solely on this evidence, it is clear that the property does not satisfy condition (b) above. The court will grant the county's motion with respect to Issues 2 and 4.

D.      *Issue 1:  Validity of County's BOPTA Charge*

Issue 1 involves a legal question that has not been adjudicated in a court of record: whether the county may charge $30 to file a BOPTA petition (the BOPTA Charge), such that the court must dismiss Plaintiff's appeal in this court for failure to pay the BOPTA Charge.

The factual record shows that, on December 31, 2020, Plaintiff timely filed a petition with the BOPTA for tax year 2020-21. (Inv's Decl of Brown, Ex A.)[6]  On January 15, 2021, the county mailed Plaintiff a "Defective Petition Notice—Real Property," stating that one or more items on the petition were "missing, unreadable, incomplete, or incorrect:  * * * $30 filing fee needed."  The notice stated that Plaintiff "ha[s] until February 4, 2021" to file a corrected petition or face dismissal. (*Id*., Ex B.)  The BOPTA did not receive a corrected petition, and the BOPTA ordered its dismissal. (*See Id*. at 2.)  Plaintiff timely appealed to the Magistrate Division, which dismissed the appeal.

Plaintiff asserts that the county may not require payment of a charge to file a BOPTA petition because no statute allows for the imposition of a charge and no case has upheld such a charge. (*See* Ptf's Resp at 1.) The county acknowledges that the property tax statutes do not expressly authorize a charge, but the county argues that the home rule provisions in Article VI,

/ / /

---

[6] It appears to the court that Plaintiff may have filed a single BOPTA petition for the parcel at issue in this case and for the separate parcel under account No. R542590.  There are indications that the exhibit numbers in the county's declaration may conflate the two parcels. (*See* Inv's Decl of Brown; Exs A-D.)  The court finds any such mistake immaterial because it is undisputed that Plaintiff paid no BOPTA Charge for his petition for the unimproved parcel (R146286) for tax year 2020-21.

section 10, of the Oregon Constitution, together with the county's charter, authorize the county to impose the charge. (Inv's Mot Dismiss at 2; Inv's Reply at 3; Inv's Mot Summ J at 3.)

The court first determines whether it has jurisdiction to address the validity of the BOPTA Charge. The court's jurisdiction generally is to hear and determine "all questions of law and fact arising under the tax laws of this state." ORS 305.410(1). There is no doubt that the property tax laws are tax laws of this state. On the other hand, there also is no doubt that the county's ordinance imposing the BOPTA Charge is *not* a law "of this state" because it was enacted by the county, not by the Oregon legislature.[7] *See Jarvill v. City of Eugene*, 289 Or 157, 167-68, 613 P2d 1 (1980) (concluding that this court did not have jurisdiction over a tax imposed by a city because no issue arose under state tax law); *Bogdanski v. City of Portland*, 21 OTR 341 (2014) (concluding that this court did not have jurisdiction over an arts tax imposed by a city). Yet the Oregon Supreme Court has construed ORS 305.410(1) as conferring on this court jurisdiction to decide "questions which must be resolved in order to decide taxability or the amount of tax" arising under tax laws of this state. *Sanok v. Grimes*, 294 Or 684, 697, 662 P2d 693 (1983). As discussed above, the BOPTA Charge burdens the right of Plaintiff, and that of most owners of property in the county, to pursue the primary and most common route of appeal to seek a reduction in the value that the county assessor has set under the state property tax laws. If such a taxpayer cannot appeal that value, the assessor's value stands. For that reason, the validity of the BOPTA Charge must be resolved in order to decide the amount of tax Plaintiff owes. If this court were to conclude that it lacks jurisdiction to decide the validity of the BOPTA Charge, the result would be a disfavored "split" of jurisdiction, because a circuit court would have to resolve the validity of the charge, and only then would Plaintiff have a potential

---

[7] As discussed below, it also is not entirely clear whether the BOPTA Charge is a "tax."

opportunity to challenge the RMV in this court. *See Sanok*, 294 Or at 693 ("Jurisdiction over a unified case should not be split between the tax court and another court. *Jarvill*, 289 Or at 167."). There are no contested facts, and the facts relevant to the validity of the BOPTA Charge are not relevant to any other, non-tax claim. *Cf. Sanok*, 294 Or at 698 ("Plaintiff's tort claims are outside the jurisdiction of the tax court, and many of the factual allegations are relevant only to those claims and not to the tax claims.") The court concludes that it has jurisdiction to decide the validity of the BOPTA Charge as part of deciding whether to dismiss the case for nonpayment of the charge and as a prerequisite to determining the RMV of the property under state property tax law.

Having determined that the court has jurisdiction to do so, the court now applies the Oregon Supreme Court's two-step analysis to decide whether imposing the BOPTA Charge was within the county's authority. "[T]he validity of local action depends, first, on whether it is authorized by the local charter or by statute * * * [and] second, on whether it contravenes state or federal law." *LaGrande/Astoria v. PERB*, 281 Or 137, 142, 576 P2d 1204 (1978). Multnomah County is a "home rule" county; it has enacted a charter that allows it to legislate on "matters of county concern" to the extent permissible under state law. *See Budget Rent-A-Car v. Multnomah Co.*, 287 Or 93, 98, 597 P2d 1232 (1979) (stating Multnomah County adopted home rule charter effective 1967); Multnomah County Charter, § 2.10 ("Except as this charter provides to the contrary, the county shall have authority over matters of county concern to the fullest extent granted or allowed" by federal and state constitutions); *id.* §§ 12A, 12B (showing no amendments to section 2.10); Or Const Art VI, § 10 (authorizing legislature to authorize county charters providing for county "authority over matters of county concern").

To determine whether a local charge involves a matter of "county concern," it sometimes is necessary to distinguish between a tax and a fee. Courts generally have held that imposing

*taxes* is a matter of county concern, without further inquiry. *See Multnomah Kennel Club v. Dept. of Rev.*, 295 Or 279, 283-84, 666 P2d 1327 (1983) ("[T]he power to tax * * * is a 'matter of county concern' generally granted"; home rule county has "implicit power * * * to levy taxes."); *AT&T Communications v. City of Eugene*, 177 Or App 379, 389, 35 P3d 1029 (2001) ("[B]road charters have been construed to confer on municipalities the power to impose taxes."). On the other hand, the subject of a *fee* is of county concern if it involves "'local civil or administrative regulation of local conditions[.]'" *Rogue Valley Sewer Services v. City of Phoenix*, 357 Or 437, 450, 353 P3d 581 (2015) (quoting *La Grande/Astoria v. PERB*, 281 Or at 142).[8] For example, a county ordinance purporting to limit the authority of state and federal law enforcement personnel to search property was held to "go[ ] well beyond any matter that legitimately may be regarded as a 'county concern.'" *State v. Logsdon*, 165 Or App 28, 33, 995 P2d 1178 (2000). In this case, the subject of the BOPTA Charge is an appeal involving property located in the county, and the tax on that property is collected by the county solely for the benefit of the county and of other taxing jurisdictions within the county. *See* ORS 311.255 (stating county tax collector collects all ad valorem property taxes in the county). The BOPTA itself must consist exclusively of county officials and county residents, and the county is responsible for paying their per diem allowances and the costs of their training. *See* ORS 309.067(1) ("A pool of members of the *county* governing body * * * A pool of nonoffice-holding residents of the *county* * * *.") (emphases added); ORS 309.022(2) (providing for per diem from county budget). Therefore, without deciding whether the BOPTA Charge is a "tax" or a "fee," the court readily

---

[8] The court treats cases addressing the powers of home rule cities as authoritative in analyzing the powers of the county as a home rule county, because the term "matters of county concern" has been construed to mean that counties operating under a home rule charter have powers that "may be as broad as" those of a home rule city. *Schmidt v. Masters*, 7 Or App 421, 428, 490 P2d 1029 (1971), *rev den* (1972); *see also Buchanan v. Wood*, 79 Or App 722, 728, 720 P2d 1285 (1986) ("The city home rule provisions create an analogous sphere of local authority and, accordingly, we rely on them to resolve the conflict here.")

concludes that the BOPTA Charge addresses a matter of county concern.[9]  Accordingly, the

court determines that the BOPTA Charge satisfies the first part of the *LaGrande/Astoria* test, in

that it is authorized by the county's home rule charter.

The court proceeds to analyze whether imposition of the BOPTA Charge is preempted by

state law.  The court has found nothing in state property tax laws that expressly prohibits

imposition of the BOPTA Charge.  As noted, ORS 309.022(2) requires the county to pay for

elements of the BOPTA program:

> "(2) Provision shall be made in the county budget for the following:
>
> "(a) An amount sufficient to defray the reasonable expenses of the boards, including a per diem allowance.
>
> "(b) An amount sufficient to defray the necessary traveling and living expenses of each person whose name appears in the pools described in ORS 309.067 while completing training approved by the Department of Revenue as required under subsection (1) of this section.
>
> "(c) An amount sufficient to compensate any appraiser hired by the board under ORS 309.024."

/ / /

---

[9] The BOPTA Charge has attributes of both.  It resembles a fee because it is "imposed on persons who apply for or receive a government service that directly benefits them," namely on taxpayers using the appeal process. *McCann v. Rosenblum*, 355 Or 256, 261, 323 P3d 955 (2014) (citing *Automobile Club v. State of Oregon*, 314 Or 479, 485-86, 840 P2d 674 (1992)).  However, the court has found no indication that the revenue raised by the BOPTA Charge is used to "regulate or benefit those parties" from whom the charge is collected, which is the main hallmark of a fee. *Rogue Valley*, 357 Or at 447.  In contrast to other county fee provisions, the ordinance imposing the BOPTA Charge contains no language directing that the proceeds be used for the BOPTA program or for any purpose relating to assessment and taxation. *Compare* MCC § 7.008 ("The Division [of Assessment, Recording and Taxation] shall charge a filing fee for a [BOPTA] Appeal, as set by Board resolution.") *and* Multnomah County Resolution No. 2013-159 ("The division shall charge a filing fee of $30 per account for a petition filed with the [BOPTA], effective for tax years beginning on or after July 1, 2014."); *with* MCC 17.003 (community service sentencing fee) ("All fees collected under this section shall be used to fund services provided by the alternative community service program.") *and* MCC 11.002, 11.003 (requiring fees for copies of records to be based upon "actual cost").  The BOPTA Charge appears to fall under a general ordinance that acknowledges that "fees" are collected from "the persons directly served" but is silent about how the proceeds are to be spent. *See* MCC 11.001 ("Because of the increasing costs to the county of providing services to the public and of discharging the legal responsibilities of the county, and because of the decreased availability of general county revenue to defray costs, the Board declares it to be in the interests of the people of the county for the fees established in this code of ordinances to be imposed and collected by the county from the persons directly served or affected by the provision of such services and the performance of such responsibilities.").

The court applies the statutory interpretation framework in *State v. Gaines* to determine whether the requirement to make "provision in the county budget" for substantial costs of operating the BOPTA program preempts the county's collection of the BOPTA Charge from petitioners. 346 Or 160, 171-72, 206 P3d 1042 (2009). To begin, the text of ORS 309.022(2) does not specify any particular source of budgeted revenue as an exclusive means to pay for the BOPTA program.

The context includes laws in existence when the statute was adopted. *State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012) (stating that context includes "related statutes and case law"). Here, the statute dates materially to 1953 and 1955. *See* Or Laws 1953, ch 714, § 1 (amending OCLA § 110-402 to read, in relevant part: "Sufficient provision shall be made in the county budget for the reasonable expenses of the board [the BOPTA's predecessor] including a per diem allowance to the members thereof."); Or Laws 1955, ch 709, § 2 (replacing text of ORS 309.022(2) to read: "Sufficient provision shall be made in the county budget for the reasonable expenses of the board, including a per diem allowance to the members thereof, a sum sufficient to defray the necessary traveling and living expenses of one member of the board while attending an in-service training school conducted by the State Tax Commission and a sufficient amount to compensate the appraisers provided for under ORS 309.024.").

Considering the context[10] provided by contemporaneous statutes and constitutional provisions, legislators in 1953 and 1955 might reasonably have assumed that a county ultimately would fund BOPTA expenses mainly or exclusively from property tax revenues.[11] However, the

---

[10] No party has proffered any legislative history, and the court has found no legislative history readily available for the 1953 or 1955 laws.

[11] The "levy-based" property tax system at that time did not limit tax rates or cap the growth in taxable values; those constraints did not apply until the 1990s when constitutional amendments known as Measures 5 and 50 were overlaid on existing law. *See* ORS 310.020 ("The county court or board of county commissioners for each county in the state shall, in July of each year, levy a tax upon all taxable property in the county sufficient in amount to defray the expenses of the county for the current fiscal year.") (unchanged since 1953); Ballot Measure 5 (1990) (adding Or Const, Art XI, §§ 11b-11f); Or Laws 1991, ch 459 (implementing Measure 5 for tax years beginning on or after July 1, 1991); Ballot Measure 50 (1997) (amending Or Const, Art XI, § 11); Or Laws 1997, ch 541

court finds the reference to the "county budget" in ORS 309.022(2) significant. In both 1953 and 1955, Oregon's Local Budget Law contemplated that municipal corporations, including counties, might derive budgeted receipts from a wide range of sources, including "fees, licenses, fines, forfeited bail, interest * * * sales of property or other assets * * * delinquent taxes, judgments, damages, [and] rent * * *." ORS 294.345(1) (1953); ORS 294.345(1) (1955). Read in this context, the 1953 and 1955 laws express no intention to forbid counties from using funds from sources other than property taxes to pay for the local appeals process, should those sources become available. The court concludes that ORS 309.022(2) stops far short of "'unambiguously express[ing] an intention to preclude local governments from regulating' in the same area as that governed by the statute." *Rogue Valley*, 357 Or at 451 (quoting *Gunderson, LLC v. City of Portland*, 352 Or 648, 663, 290 P3d 803, 811 (2012).) Therefore, the court concludes that the BOPTA Charge is not preempted by state law.[12]

///

///

(implementing Measure 50 as of July 14, 1997). And the lack of a county home rule constitutional provision and enabling legislation before 1959 may have limited counties' authority to raise revenue from other types of charges. *See* Orval Etter, *County Home Rule in Oregon Reaches Majority*, 61 Or L Rev 3, 35-40 (1982) (discussing development of constitutional amendment allowing for county home rule).

[12] Plaintiff has not raised, and the court does not address, uniformity, due process, equal protection, or other constitutional concerns. (*See* Ptf's Compl, TC 5441 (seeking reduction of RMV); Ptf's Compl, TC 5442 (same); Ptf's Cross-Mot Block Def-Int's & Mot Set Trail [sic] Date at 1 (arguing no cases or statutes allow for imposing a fee on BOPTA appeals); Ptf's Resp Obj Def-Int's Mot Summ J and Counterclaims at 1 (restating facts of case but not providing further argument).) The court briefly notes the Court of Appeals' decision in *City of Banks v. Washington Cty*, 29 Or App 495, 564 P2d 720 (1977), which is not binding on this court and has not been followed or cited in other cases. The court there concluded that a county's tax collection fee charged to other tax-levying local government entities within the county violated one of Oregon's Uniformity Clauses. *See* Or Const, Art IX, § 1 ("The Legislative Assembly shall, and the people through the initiative may, provide by law uniform rules of assessment and taxation. All taxes shall be *levied* and *collected* under general laws operating uniformly throughout the State.") (emphases added). This court notes that the fee in *City of Banks* was measured as a percentage of revenue "collected" for the local entity, which was more arguably within the scope of Article IX, section 1 than the BOPTA Charge imposed on appeals, as nothing in the appeals process abates or prevents the collection of property tax. *See* ORS 311.505 (providing due dates for "all taxes and other charges due from the taxpayer or property * * * on the latest tax roll"); ORS 311.806(1)(g) (authorizing refund if court corrects the roll on appeal); ORS 311.807 (authorizing counties to establish refund reserve accounts to set aside funds from regular annual collections in order to pay for "anticipated annual refunds" as determined by the Department of Revenue).

### III.    CONCLUSION

Having decided all issues in favor of the county, the court concludes that dismissal in the Magistrate Division was appropriate.  Now, therefore,

IT IS ORDERED that Defendant-Intervenor's Motion for Summary Judgment is granted.

Dated this 5th day of February, 2024.

2/5/2024 11:51:59 AM

**Judge Robert T. Manicke**